Michelle Elaine BEARNTH, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–09–00906–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 27, 2011.

Rehearing Overruled Feb. 8, 2012.

Discretionary Review Refused
May 16, 2012.

Patrick McCann, Houston, for Appellant.

Dan McCrory, Asst. Dist. Atty., Houston, for State.

Panel consists of Justice JENNINGS, Justice SHARP, and Justice BROWN.

## OPINION

HARVEY BROWN, Justice.

A jury found Michelle Elaine Bearnth guilty of the offense of felony murder, with

the underlying felony of injury to a child, and assessed punishment at thirty-three years' confinement.[1] In five issues, Bearnth contends (1) the evidence is legally and factually insufficient to support the jury's verdict; (2) the trial court erred in denying her motion to quash the felony murder indictment because that offense is in *pari materia* with the offense of injury to a child, injury to a child is assaultive conduct that cannot underlie a felony murder charge, and the indictment was motivated by prosecutorial vindictiveness; and (3) she was entitled to a hearing on her motion for new trial.

We affirm.

### Background

Bearnth lived in a home with her two children, her boyfriend Josh Perkins, and his three children from a prior relationship. Bearnth was the primary caregiver to the five children, including Perkins's two-year old daughter K.P., who was blind in her right eye. On September 30, 2008, Bearnth called Perkins at work to report that K.P. had fallen in the backyard and suffered a black eye after hitting a paving stone. Perkins saw the black eye when he returned home from work, but the child otherwise appeared unharmed and acted normally.

The next day, Bearnth, who was the only adult in the house, called 911 stating that K.P. had fallen in the bathroom. When paramedics arrived at the scene, K.P. was unconscious and barely breathing. She had bruises on her hip, arms, legs, chest, upper and lower back, and around her mouth. K.P. also had two skull fractures—one on the side of her head and one on the back of her head.

Bearnth remained unemotional the entire time the paramedics tended to K.P.

She told the paramedics and police officers at the scene that K.P. was prone to accidents and fell frequently because of her limited vision, but she gave inconsistent accounts of how K.P. fell. K.P. never regained consciousness and died in the hospital one week later.

A grand jury indicted Bearnth for injury to a child. *See* TEX. PENAL CODE ANN. § 22.04. The indictment was later amended to allege felony murder with the underlying offense of injury to a child through intentional, knowing, reckless, or criminally negligent conduct. *See* TEX. PENAL CODE ANN. § 19.02(b)(3). Bearnth filed a motion to quash the indictment, which the trial court denied.

At trial, the jury heard testimony from the paramedics and police officers at the scene who described K.P.'s injuries, Bearnth's explanations of the events giving rise to the injuries, and Bearnth's demeanor. Several social workers and Child Protective Services representatives testified regarding their investigation into K.P.'s injuries. The jury also heard testimony from the doctor who treated K.P. in the hospital, the medical examiner, and a forensic anthropologist. All three doctors testified that K.P.'s injuries were not accidental or consistent with a short fall. K.P.'s father testified that K.P. acted normally the night before she was injured, and various relatives and friends testified that K.P. did not have bruises when she returned to Perkins and Bearnth's care after staying with her mother a few days earlier.

The defense presented testimony from several witnesses who described Bearnth's care and demeanor with K.P. and the other children. Dr. Emily Ward testified as an expert and contradicted the conclusions of the other three doctors that a short and

---

1. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(3), 22.04 (West 2011).

accidental fall could not have caused K.P.'s complex skull fracture. Bearnth herself also testified that K.P.'s injuries were the result of an accidental fall from the toilet.

The jury found Bearnth guilty of felony murder and assessed punishment. Bearnth filed a motion for new trial, asserting that the behavior of several CPS employees present at trial and the exhibition presented by K.P.'s uncle across the street from the court house intimidated the jurors and witnesses. The trial court overruled the motion by operation of law.

### Sufficiency of the Evidence

In her first issue, Bearnth contends the evidence is legally and factually insufficient to support her felony murder conviction. A defendant commits felony murder if she "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, [she] commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(3). The underlying felony offense in this case is injury to a child. See TEX. PENAL CODE ANN. § 22.04.

### A. Standard of Review

This court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant raises a legal or a factual sufficiency challenge. See Ervin v. State, 331 S.W.3d 49, 52–54 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd). This standard of review is the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See Brooks v. State, 323 S.W.3d 893, 912, 927–28 (Tex.Crim.App.2010). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact-finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. See Jackson, 443 U.S. at 319, 99 S.Ct. at 2789; Laster v. State, 275 S.W.3d 512, 517 (Tex.Crim.App.2009). We can hold evidence to be insufficient under the Jackson standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. See Jackson, 443 U.S. at 314, 320, 99 S.Ct. at 2786, 2789. The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact-finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. See Jackson, 443 U.S. at 319, 99 S.Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex.Crim.App.2007). An appellate court presumes the fact-finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that resolution is rational. See Jackson, 443 U.S. at 326, 99 S.Ct. at 2793.

### B. Evidence of Felony Murder

Three medical experts opined that K.P.'s injuries could not have been caused by a short or accidental fall. Dr. Ezekiel Salinas, K.P.'s treating physician, described the injuries as the result of a "violent force" and consistent with her hitting, being hit with, or being pushed into a blunt object. He stated that the fracture on the side of her head was significant enough that she would not have been conscious for very long after the injury. He also testified that Bearnth's story about K.P. falling in the backyard was inconsistent with

K.P.'s injuries; she had a black eye but no scrapes or abrasions.

Dr. Kathryn Haden–Pinneri performed the autopsy on K.P. She determined that the injury to the side of K.P.'s head caused her death. She also testified that the severity of K.P.'s skull fracture was inconsistent with a three-foot-tall child standing in the bathtub and falling, or sitting on the toilet and falling, because there was not enough force from that height to cause such a fracture. Dr. Haden–Pinneri did not believe K.P. slipped on the wet bathroom floor because the doctor observed bruises covering K.P.'s entire body, instead of significant bruising on only one side. She counted 72 bruises on K.P.'s body and testified that a short fall would not cause that degree of bruising. She agreed with Dr. Salinas that Bearnth's story about K.P. falling in the backyard did not explain K.P.'s black eye and that a particular bruise on K.P.'s hip was unlikely to have been caused by an accident. According to Dr. Haden–Pinneri, the fracture to the back of K.P.'s head appeared to be healing and therefore was older than the injury to the side of her head. Based on her findings, Dr. Haden–Pinneri determined that the manner of K.P.'s death was homicide as a result of blunt force trauma to the head.

Dr. Haden–Pinneri consulted with a forensic anthropologist regarding K.P.'s injuries. Dr. Jennifer Love, who specializes in the study of bones and fractures, testified that the fracture to the back of K.P.'s head occurred one or two weeks before the fracture to the side of her head. She disagreed that the fracture to the side of K.P.'s head was accidental. She testified that the injury was caused by the skull hitting a blunt object with a "significant force greater than [a] typical fall," regardless of whether the object was swung or K.P. was pushed into the object. Finally,

Dr. Love testified that three "red flags" for child abuse were all present with K.P.—the location of the fracture, the type of fracture, and the number of fractures.

In addition to the testimony of the State's medical experts, the jury heard testimony regarding K.P.'s physical state from various eyewitnesses. Several paramedics testified to the number of bruises on K.P.'s body, that some appeared to be partially healed, that the bruises did not appear to be the "usual kid-falling bruises," and that they were not accompanied by the scraped and bruised knees common with a child who frequently falls. Two paramedics testified that some of the bruises on K.P.'s back and legs resembled handprints and that the bruises around her mouth were the size of fingertips.

The State presented testimony showing that Bearnth's explanation of K.P.'s injuries changed over time. One paramedic testified that Bearnth recounted that she was bathing K.P. when the child fell and hit her head in the bathtub. An officer testified that she heard Bearnth tell the same story to a friend later at the scene. Bearnth told another paramedic that K.P. had suffered from diarrhea for several days, that she was bathing K.P. after the child had defecated on the bathroom floor, that K.P. was not acting right and "playing possum" in the bathtub, and that the child fell when Bearnth took her out of the tub. She did not mention that K.P. fell from the toilet.

Officer Pool, who was in charge of the police investigation, interviewed Bearnth in his patrol car at the scene. Bearnth told him that K.P. had defecated on the bathroom floor and was sitting on the toilet as Bearnth cleaned the bathroom. Bearnth left the room briefly to remove a basket and returned to find K.P. lying face-up on the floor, having hit her head on the bathtub and the floor. A social worker

who interviewed the family at the hospital testified that Bearnth told her K.P. fell from the toilet when Bearnth removed a basket from the room.

Bearnth's explanation of the other bruises on K.P.'s body also changed over time. At one point, Bearnth told a CPS worker that she had no explanation for the bruises on K.P.'s arms. Two weeks later, Bearnth told another CPS worker that K.P. was bruised when she returned from her weekend visit with her mother. But the jury heard testimony from various family members and friends who stated K.P. was not bruised and acted normally when she returned from spending the weekend with her mother only two days before her injury. Perkins also testified that he did not see any bruises on K.P., other than her black eye, the night before her injury and that she behaved normally.

The record also indicates that Bearnth was the only adult present at the time of the injury; there is no evidence that anyone else was in the bathroom with K.P.

Bearnth's contends that (1) the paramedics inaccurately relayed her explanation of the accident, (2) her medical expert negated the testimony of the State's three doctors, (3) the three doctors further acknowledged that their conclusions could be wrong, and (4) no one advanced a clear theory about what happened or linked the bruises to Bearnth. The jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, was free to weigh Bearnth's testimony and her expert's opinions against the State's evidence. *See Clayton,* 235 S.W.3d at 778; *Williams v. State,* 294 S.W.3d 674, 683 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd). As to Bearnth's second point, Dr. Salinas and Dr. Haden–Pinneri acknowledged that some studies indicate that a complex fracture can occur with a short fall, but stated that those studies did not contradict their ultimate conclusions about the extent of K.P.'s head injury. Dr. Salinas iterated that the studies also state that the more complex the fracture, the less likely the fall was accidental. Dr. Haden–Pinneri criticized the studies because they defined a short fall to include a fall from monkey bars or a swing, and she was unsure of the methodology used. This testimony does not negate either doctors' prior testimony.

■ "[T]he verdict will withstand a sufficiency challenge as long as the combined and cumulative force of all the circumstances permits the conclusion that the jury was rationally justified in finding the defendant guilty of each element of the crime beyond a reasonable doubt." *Williams,* 294 S.W.3d at 683 (holding evidence was sufficient in injury to child case when medical examiner testified that child's injuries could not have occurred as defendant described and were sustained by violent physical abuse at time when defendant was alone with child). Injury to a child cases particularly depend on circumstantial evidence because "there is rarely direct evidence of exactly how the child's injuries occurred." *Id.* "Texas case law is replete with holdings that when an adult defendant has had sole access to a child at the time its injuries are sustained, the evidence is sufficient to support a conviction for injury to a child, or murder if the child dies." *Garcia v. State,* 16 S.W.3d 401, 405 (Tex.App.-El Paso 2000, pet. ref'd).

The jury would have been rationally justified in concluding Bearnth caused the injury to K.P. as a basis for felony murder given the testimony that K.P.'s injuries required more force than a short fall, that the effects of the injury would have been quickly apparent, and that Bearnth was the only adult in the house. *See Williams,* 294 S.W.3d at 683. Bearnth's changing

narrative of how K.P. fell is further circumstantial evidence of guilt. *See Kemmerer v. State,* 113 S.W.3d 513, 515 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd) (holding evidence that child's injury required more force than defendant's explanation of short fall and jury could have viewed defendant's changing explanations as evidence of guilt). We hold the evidence is sufficient to support the jury's finding of felony murder through injury to a child. *See Williams,* 294 S.W.3d at 683.

We overrule Bearnth's first issue.

### Motion to Quash Indictment

In her second, third, and fourth issues, Bearnth argues that the trial court erred in denying her motion to quash the State's indictment because (1) the offenses of felony murder and injury to a child are in *pari materia,* (2) injury to a child is assaultive conduct that cannot provide the underlying felony in a felony murder prosecution, and (3) the timing, emotional nature of this case, and limited evidence indicate that her conviction was motivated by prosecutorial vindictiveness.

### A. Standard of Review

■ "An issue raised by an indictment may present a question of law." *Hollin v. State,* 227 S.W.3d 117, 120 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). The question is subject to de novo review when its resolution does not require an evaluation of the credibility and demeanor of a witness. *Id.*

### B. *Pari Materia*

■ In her second issue, Bearnth complains that she should have been prosecuted for the specific offense of injury to a child, not the general offense of felony murder, because the provisions of the Penal Code setting forth those offenses are in *pari materia. Pari materia* is a settled rule of statutory interpretation: "statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered to be in pari materia though they contain no reference to one another, and though they were passed at different times or at different sessions of the legislature." *Azeez v. State,* 248 S.W.3d 182, 191 (Tex.Crim.App. 2008) (quoting *Cheney v. State,* 755 S.W.2d 123, 126 (Tex.Crim.App.1988)); *see* TEX. GOV'T CODE ANN. § 311.026 (West 2005) (codification of doctrine). The rule applies "where one statute deals with a subject in comprehensive terms and another deals with a portion of the same subject in a more definite way." *Azeez,* 248 S.W.3d at 192 (quoting *Cheney,* 755 S.W.2d at 126). Where a general statute and a more detailed enactment are in conflict, the latter will prevail unless it appears the legislature intended to make the general act controlling. *See* TEX. GOV'T CODE ANN. § 311.026(b); *Cheney,* 755 at 126.

■ Two penal provisions are in *pari materia* "where one provision has broadly defined an offense, and a second has more narrowly hewn another offense, complete within itself, to proscribe conduct that would otherwise meet every element of, and hence be punishable under, the broader provision. In the case in which the special statute provides for a lesser range of punishment than the general, obviously an 'irreconcilable conflict' exists, and due process and due course of law dictate that an accused be prosecuted under the special provision, in keeping with presumed legislative intent." *Mills v. State,* 722 S.W.2d 411, 414 (Tex.Crim.App.1986).

■ To determine whether two statutes are in *pari materia,* we consider four factors: whether the statutes (1) are contained in the same legislative act, (2)

require the same elements of proof, (3) involved different penalties, and (4) were clearly written to achieve the same objective. *Hollin*, 227 S.W.3d at 121 (citing *Burke v. State*, 28 S.W.3d 545, 547 (Tex. Crim.App.2000)). Similarity of purpose or object is the most important factor. *See Hollin*, 227 S.W.3d at 121.

This appeal involves the broad offense of felony murder and the "more narrowly hewn" offense of injury to a child. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(3), 22.04. The "felony murder" statute provides that a defendant commits murder when she commits a felony other than manslaughter and, during the course of its commission, commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3). A defendant is guilty of "injury to a child" if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury." TEX. PENAL CODE ANN. § 22.04(a).

The indictment alleged that Bearnth committed or attempted to commit "the felony offense of injury to a child by unlawfully, intentionally, knowingly, recklessly and with criminal negligence causing bodily injury" and, "while in the course of and furtherance of the commission of and attempt to commit said offense, [Bearnth] did commit and attempt to commit an act clearly dangerous to human life." The injurious or "clearly dangerous" act allegedly committed by Bearnth was (1) striking K.P.'s head with a blunt object, an unknown object, or her hand or (2) causing K.P.'s head to strike a blunt or unknown object.

The trial court's charge tracked the language in the indictment and instructed the jury to find Bearnth guilty of felony murder if she "unlawfully, intentionally, knowingly, recklessly or with criminal negligence caus[ed] bodily injury to" K.P. by causing her head to strike a blunt object or by striking her head with a blunt object and, "while in the course of and furtherance of the commission or attempt to commit said offense did commit or attempt to commit an act clearly dangerous to human life" by causing K.P.'s head to strike a blunt object or by striking her head with a blunt object. The jury found Bearnth guilty of felony murder, but did not answer whether it found her guilty of injury to a child by "intentionally or knowingly causing bodily injury to [K.P.]."

Applying the four factors listed above, we first note that felony murder and injury to a child appear in the Penal Code under different chapters—felony murder in chapter 19, titled "Criminal Homicide," and injury to a child in chapter 22, titled "Assaultive Offenses." While both chapters 19 and 22 are contained in title five, "Offenses Against the Person," the severity and type of offense vary between the two chapters. The chapter 22 offenses result in the death of the complainant, whereas the chapter 19 offenses are assaults. The Court of Criminal Appeals has noted that statutes featured in the same title, but in different chapters, are not necessarily in *pari materia*. *See Mills*, 722 S.W.2d at 416 (holding statutes for theft and securing execution of document by deception not in *pari materia* even though both appear in same title of Penal Code); *see also Roberson v. State*, No. AP–74671, 2002 WL 34217382, at *11– 12 (Tex.Crim.App. Jun. 20, 2007) (mem. op., not designated for publication) (noting capital murder and injury to a child from different legislative acts and are not in *pari materia* though both appear in different chapters under same title).

Second, felony murder and injury to a child do not require the same elements of proof. Section 22.04 is limited to offenses against a specific class of complainants considered especially vulnerable—children, the elderly, and the disabled. *See* TEX. PENAL CODE ANN. § 22.04. In contrast, felony murder requires proof of an underlying felony regardless of the identity of the complainant or the type of felony. *See id.* § 19.02(b)(3). Felony murder does not require any mental state beyond that required for the commission of the underlying felony. *Lomax v. State,* 233 S.W.3d 302, 306–07 (Tex.Crim.App.2007); *see Burke,* 28 S.W.3d at 549 (holding elements for aggravated assault with serious bodily injury and intoxication assault too dissimilar to be in *pari materia* because intoxication assault requires proof of intoxication and no mental state and aggravated assault requires proof that, regardless of intoxication, defendant acted intentionally, knowingly, or recklessly). More importantly, felony murder requires proof that the defendant caused the death of the complainant, whereas injury to a child only requires proof of serious bodily injury; serious mental deficiency, impairment, or injury; or bodily injury. *Compare* TEX. PENAL CODE ANN. § 19.02(b)(3), *with id.* § 22.04. Thus, the conduct proscribed in the "injury to a child" statute would not meet every element of the offense under the "felony murder" statute.

Third, felony murder and injury to a child involve different penalties. Felony murder is a first degree felony punishable by five years to life in prison. *See* TEX. PENAL CODE ANN. §§ 12.32, 19.02(c) (West 2011). In contrast, as indicted and charged in this case, injury to a child may be a felony in the first, second, or third degree or a state jail felony, depending on the defendant's mental state and the circumstances of the offense. *See id.* § 22.04(e)-(g) (explaining that degree of

felony is coordinate with defendant's mental state). The available punishment for injury of a child ranges from 180 days to life in prison. *See id.* §§ 12.32–12.35 (West 2011).

Finally, we cannot say the "felony murder" and "injury to a child" statutes were written to achieve the same purpose. By proscribing the conduct that constitutes "injury to a child" under section 22.04, the legislature sought to protect a specific class of individuals considered particularly vulnerable to injury and exploitation. *See Ybarra v. State,* No. 03–06–00685–CR, 2008 WL 2468706, at *4 (Tex.App.-Austin June 18, 2008, pet. ref'd) (mem. op., not designated for publication) (stating section 22.04 does not have same purpose as Code of Criminal Procedure art. 42.12, § 3g(a)(2) because "the former is designed to protect children from serious bodily injury while the latter is designed to deter the use of a deadly weapon in the commission of any felony offense."). The felony murder statute, however, serves the general purpose of imposing criminal responsibility for death and preventing homicide by deterring, punishing, and incapacitating "persons who commit felonious acts that are 'clearly dangerous to human life,'" whether or not those acts are against a child. *See Hollin,* 227 S.W.3d at 122 (holding that felony murder statute "encompasses the purpose of the intoxication manslaughter statute, as well as other felonies, and goes beyond that specific purpose"). "When you embark upon an inherently dangerous criminal project, you are responsible for the deadly consequences that result from that felonious conduct." *Lawson v. State,* 64 S.W.3d 396, 398 (Tex. Crim.App.2001) (Cochran, J., concurring). Consequently, the objectives of the "felony murder" and "injury to a child" statutes are not so closely related so as to justify interpreting them together. *See Hollin,*

227 S.W.3d at 122; *Ybarra*, 2008 WL 2468706, at *4.

Because our analysis leads us to conclude that injury to a child under section 22.04 and felony murder under section 19.02(b)(3) involve different penalties, are in different chapters of the Penal Code, require different elements of proof, and are not intended to achieve the same objective, we hold these statutes are not in *pari materia*. *See Hollin*, 227 S.W.3d at 122.

We overrule Bearnth's second issue.

## C. Underlying Felony

■ In her third issue, Bearnth asserts that a felony murder conviction will not lie when the underlying felony is injury to a child. Only manslaughter and lesser-included offenses of manslaughter, however, are excluded from felony murder; "[t]he offense of 'injury to a child' can qualify as an underlying felony in a felony murder prosecution." *Contreras v. State*, 312 S.W.3d 566, 584 (Tex.Crim.App.2010) (citing *Johnson v. State*, 4 S.W.3d 254, 258 (Tex.Crim.App.1999)); *see Garrett v. State*, 573 S.W.2d 543, 545–46 (Tex.Crim.App. 1978).

We overrule Bearnth's third issue.

## D. Prosecutorial Vindictiveness

In her fourth issue, Bearnth challenges the trial court's denial of her motion to quash the indictment "without a hearing when there was clearly an issue of prosecutorial vindictiveness at hand...." She asserts the record establishes that the State amended the indictment to include a felony murder charge in retaliation for her exercise of her right to a trial by jury. We disagree.

Bearnth's fourth issue is drafted so as to complain about the trial court's failure to conduct a meaningful hearing on the issue of prosecutorial vindictiveness. Bearnth suggests, as an alternative form of relief, that the Court should abate and remand this case for "findings of fact and conclusions of law or a hearing on this issue." We note, however, that the reporter's record includes a hearing at which both Bearnth's motion to quash the indictment and the State's motion to amend the indictment were presented. The hearing spans more than 20 pages of the reporter's record. At no time during the hearing did the trial court limit Bearnth's presentation of her motion and arguments, and Bearnth did not object to the manner in which the hearing was conducted. Neither did she request a continuance or an opportunity for further hearing on the issue of prosecutorial vindictiveness. Given these circumstances, Bearnth's complaint about the lack of a meaningful opportunity to be heard is without merit.

■ Construing Bearnth's fourth issue as a complaint that the trial court erred in denying her claim of prosecutorial vindictiveness, we conclude that Bearnth has not established she is entitled to relief. "Courts must presume that a criminal prosecution is undertaken in good faith and in nondiscriminatory fashion to fulfill the State's duty to bring violators to justice." *Neal v. State*, 150 S.W.3d 169, 173 (Tex.Crim.App.2004). A defendant bears the burden of proving, by a preponderance of the evidence, a claim of prosecutorial vindictiveness. *Ex parte Legrand*, 291 S.W.3d 31, 41 (Tex.App.-Houston [14th Dist.] 2009, pet. ref'd). Bearnth asserts that "the timing [of the amended indictment], the emotional nature of the charged crime, the upsetting surrounding facts of a tragic death of a child, and the sparse evidence against [her] all weigh heavily in favor of a presumption that this was a case of prosecutorial vindictiveness." Bearnth, however, has not cited a case, and we have

found none, in which similar circumstances gave rise to a presumption of vindictiveness. The motion to amend the indictment was filed shortly before a trial setting, but nothing else in the record suggests that the prosecutor had an improper motive. The prosecutor informed the trial court that she filed the motion to amend in response to Bearnth's motion to quash and to cure deficiencies pointed out in that motion. On this record, we cannot conclude that the trial court erred.

We overrule Bearnth's fourth issue.

### Motion for New Trial Hearing

In her fifth issue, Bearnth contends the trial court erred by allowing her motion for new trial to be overruled by operation of law. She argues that she was entitled to a hearing on the motion because it raised issues of jury intimidation that could not be determined from the record—namely, whether the jurors were influenced by CPS workers sitting in attendance at trial or by a demonstration outside the court house. The State responds that Bearnth failed to present her motion to the trial court in accordance with the Rules of Appellate Procedure. *See* Tex.R.App.P. 21.6.

■■■ A defendant has a right to a hearing on a motion for new trial when the motion raises matters that cannot be determined from the record. *Reyes v. State,* 849 S.W.2d 812, 816 (Tex.Crim.App.1993). The trial court, however, need not conduct a hearing if the motion for new trial is not timely presented. *See* Tex.R.App. P. 21.6 (requiring defendant to present motion for new trial to trial court within 10 days of filing); *see also Rozell v. State,* 176 S.W.3d 228, 230 (Tex.Crim.App.2005) (noting that right to hearing on motion for new trial is not absolute). Presentment requires a defendant to do more than simply file the motion for new trial with the trial court

clerk. "The presentment must be directed to the trial court or another authorized to act on behalf of the trial court." *Carranza v. State,* 960 S.W.2d 76, 79 (Tex.Crim.App. 1998). This requirement puts "the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing on it.'" *Stokes v. State,* 277 S.W.3d 20, 21 (Tex.Crim.App. 2009) (quoting *Carranza,* 960 S.W.2d at 78); *see Butler v. State,* 6 S.W.3d 636, 639–40 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (op. on reh'g) (discussing history of motions for new trial and presentment requirement in criminal cases).

■■ Bearnth timely filed her motion for new trial in this case, but the record does not contain any ruling on the motion, a proposed order containing the trial judge's signature or notation, or a docket entry evidencing a hearing on the motion. The only suggestion of presentment in the record is the prayer in Bearnth's motion requesting an evidentiary hearing and a "Certificate of Presentment" stating that the motion "was presented to the court within ten days of filing as required under the rules." Both documents, however, are signed only by Bearnth's attorney; they do not include any notation from the trial judge or other court personnel. We cannot conclude that the presentment requirement was satisfied where the record shows only defense counsel's statement that the motion had been presented, but does not indicate that counsel in fact communicated the request for a hearing in a timely manner to a person capable of acting on it. *See* Tex.R.App. P. 21.6; *Hiatt v. State,* 319 S.W.3d 115, 122–23 (Tex.App.-San Antonio 2010, pet. ref'd) (holding that certificate of presentment signed by defense counsel was insufficient evidence of presentment); *Longoria v. State,* 154 S.W.3d 747, 762 (Tex.App.-Houston [14th Dist.] 2004, pet.

ref'd) (same); *Oestrick v. State,* 939 S.W.2d 232, 235 (Tex.App.-Austin 1997, pet. ref'd) (same); *see also Burrus v. State,* 266 S.W.3d 107, 115 (Tex.App.-Fort Worth 2008, no pet.) (holding that certificate of presentment and docket entry noting filing of motion were insufficient to establish presentment).

At oral argument, Bearnth's appellate counsel stated that he had hand delivered the motion to the trial judge in her chambers and requested a hearing, but then encountered difficulty in obtaining a hearing or a record of his request. However, the record before us contains no such information. We are sensitive to the realities of practice for lawyers who attempt to obtain the signature of the heavily-burdened trial judges. Nevertheless, under well-established law, it was Bearnth's burden to provide us with a record that shows she properly presented the motion. *See* Tex.R.App. P. 21.6. Although it is not required, one practice is to personally deliver the motion to the trial judge in open court and on the record. *See Gardner v. State,* 306 S.W.3d 274, 305 (Tex.Crim.App. 2009) (noting that documentary evidence or notation that trial judge personally received copy of motion could substitute for personal visits to trial courts by attorneys). Other ways to achieve presentment are by obtaining the trial court's ruling on the motion for new trial, by obtaining the trial judge's signature or notation on the proposed order, or by setting a hearing date on the docket. *See Carranza,* 960 S.W.2d at 79–80. Another option, as recognized by this court, is to schedule a hearing through the trial court's coordinator. *But-*

*ler,* 6 S.W.3d at 640 (determining presentment was shown where record showed that defense counsel informed court coordinator that motion was filed and asked that it be set for hearing, court coordinator entered a hearing date in Justice Information Management System (J.I.M.S.), and, when the hearing was rescheduled, court coordinator's initials appeared on "agreed setting" form on line designated "Approved by Court"). But, because none of these things are apparent on this record, we cannot hold that Bearnth timely presented her motion for new trial or that the trial court abused its discretion in failing to hear the motion.[2]

We overrule Bearnth's fifth issue.

### Conclusion

Having determined that the evidence is legally sufficient to support Bearnth's conviction and that the trial court did not err in denying Bearnth's motion to quash the indictment or in allowing her motion for new trial to be overruled by operation of law, we affirm the trial court's judgment.

Justice JENNINGS, joining the majority opinion and concurring separately.

Justice SHARP, concurring without opinion.

TERRY JENNINGS, Justice, concurring.

I join the majority opinion, but write separately to specifically explain why I join it in regard to the question of fact presented to this Court by appellant, Michelle

---

**2.** Bearnth's appellate counsel also suggested during oral argument that another "practicality" may justify modification of the presentment requirement: the trend towards the electronic filing of documents in trial courts. It is not our role as an intermediate appellate court to determine changes of law, but we see no reason to abandon the presentment requirement. The presentment requirement has as its objective notice to the trial court that some action is required. *See Stokes,* 277 S.W.3d at 21. That objective is not satisfied simply because a document is filed by electronic submission, rather than by paper copy.

Elaine Bearnth, in light of my recent concurring opinion in *Kiffe v. State,* 361 S.W.3d 104 (Tex.App.-Houston [1st Dist.] 2011, no pet. h.) (Jennings, J., concurring).

In *Kiffe,* the defendant argued that this Court, which has conclusive and final jurisdiction over his question of fact, should not have applied a legal-sufficiency standard of review to address his question of fact because doing so deprived him of his state constitutional and statutory right to have his question of fact addressed as a question of fact and his appellate remedy of a new trial. *See* Tex. Const. art. V, § 6(a); Tex.Code Crim. Proc. Ann. art. 44.25 (Vernon 2006) (entitled, "Cases Remanded"). Kiffe asserted that applying the legal-sufficiency standard of review to his question of fact and depriving him of his appellate remedy of a new trial violated his federal and state rights to due process of law. *See* U.S. Const. amends. V, XIV; Tex. Const. art. I, § 19.

Given the express language of article V, section 6 of the Texas Constitution and article 44.25 of the Texas Code of Criminal Procedure, it is readily apparent that answering a defendant's question of fact as a purely legal question violates the United States Constitution's guarantee of due process of law, as well as its guarantee of the equal protection of the laws, because it, in fact, deprives the defendant of her well-established Texas appellate remedy of a new trial, recognized in the Texas Constitution and by the Texas Legislature in article 44.25. *See Kiffe,* 361 S.W.3d, at 110–12 (Jennings, J., concurring); *see also* U.S. Const. amends. V, XIV; *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (concluding in states that provide for appellate review, criminal defendant is entitled to protections afforded under Due Process and Equal Protection Clauses of United States Constitution); *see also M.L.B. v. S.L.J.,* 519 U.S.

102, 111, 117 S.Ct. 555, 561, 136 L.Ed.2d 473 (1996) (quoting *Rinaldi v. Yeager,* 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966)) ("This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.").

Nevertheless, the majority in *Kiffe* did not agree and answered his question of fact as a question of law, overruling his constitutional issues. *Kiffe,* 361 S.W.3d at 107–10. Unless this Court subsequently overrules *Kiffe,* we must accept *Kiffe* as binding precedent. *Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex.1964).