**Opinion issued March 10, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00490-CR

————————————

**EDGAR IVAN GUTIERREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1450874**

## MEMORANDUM OPINION

Edgar Ivan Gutierrez was convicted of felony murder[1] for causing serious

bodily injury to a child, an act clearly dangerous to human life, which resulted in

---

[1]     TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011).

the death of a seventeen-month-old child, James.[2] He argues that the evidence was insufficient to show that he was the person who killed James. We affirm.

## Background

A few months before James's death, his mother moved into an apartment with Gutierrez, her then-boyfriend, and two other roommates. About a month before James's death, Gutierrez, who was not working at the time, began staying home and watching James while James's mother worked. During that time, James's mother began noticing that James had bumps and bruises, but, when asked, Gutierrez gave her reasons for each injury.

One of the roommates testified that she saw James the morning of his death and that he "was normal like every day." According to the roommate, James seemed "fine": he was "crawling on the carpet" and playing. After the roommate left the apartment, Gutierrez was the only adult with James for the next few hours.

Toward the end of that period, Gutierrez called James's mother at work, angry at James's three-year-old sister, who was staying at their apartment at the time. James's mother heard James crying in the background during that phone call. "Minutes" later, Gutierrez called her again and told her that James was laying "on the floor unresponsive." Gutierrez told James's mother that he had called emergency assistance.

---

[2] The child will be referred to by the pseudonym, "James," both to protect his privacy and for ease of reading.

When the emergency personnel arrived, Gutierrez was the only adult at the apartment. They found James with "injuries" from "head to toe, front to back, not in any specific pattern, mostly bruises, some scrapes but . . . mostly soft tissue injuries that were immediately visible." They transported James to the hospital, where he died a few days later.

The State immediately began investigating whether James's death was a result of child abuse, and, as a result of the investigation, charged Gutierrez with felony murder. The police officer who helped investigate the crime testified that James's injuries were consistent with him "being struck with and against a blunt object." Dr. Isaac, who examined James at the hospital, testified that James suffered a skull fracture, caused by a "direct blow to the back of the head" or a "slam to [his] head." The Harris County Medical Examiner who conducted the autopsy testified that James died because of brain injuries from a blow to his head.

Two witnesses at Gutierrez's trial testified that the fatal blow that caused James's death occurred the day he was admitted to the hospital. Dr. Isaac, the doctor who treated James, testified that if a child was acting "normal" in the morning, the child "wasn't injured at that time." Isaac examined pictures of James taken the day before he was admitted to the hospital and testified that James could not have been "alert and interactive" like he was in those pictures if he had the head injury then.

Isaac also believed that the blow to the head "most likely" occurred the day James was admitted to the hospital because there was no "evidence of healing." The Harris County Medical Examiner who conducted the autopsy agreed that the brain injuries that caused the child's death occurred "about the time the child went into the hospital" because no healing had occurred.

A second medical examiner examined bone fractures in James's leg. That examiner testified that those injuries had begun healing and, thus, likely took place between 10 to 14 days before the day James was admitted to the hospital.

The jury found Gutierrez guilty of felony murder and sentenced him to 80 years in jail. Gutierrez appeals his conviction.

**Evidence linking Gutierrez to the Murder**

Gutierrez argues that the evidence presented at trial "is insufficient to support the verdict of felony murder" because no evidence shows that Gutierrez "was the one who intentionally or knowingly committed injuries to the child." He argues that he "was not the only person who had access to [James] during the time that the State's expert doctors indicated that [he] probably sustained the various injuries, ranging from the day [he] was taken to the hospital up to two weeks prior to presenting at the hospital." He does not challenge the State's experts' opinions that the injuries were not of the sort that occur as a result of an accidental fall.

4

### A.    Standard of review

We review a challenge to the sufficiency of the evidence under the standard in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010). Under the *Jackson* standard, insufficient evidence exists to support a conviction if, considering all of the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from that evidence in making our determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Evidence is insufficient under four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *Laster*, 275 S.W.3d at 518; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

5

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to give the testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). And they may choose to believe or disbelieve any part of a witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "Likewise, 'reconciliation of conflicts in the evidence is within the exclusive province of the jury.'" *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (quoting *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)).

An appellate court presumes the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S. Ct. 2211, 2218 (1982).

## B.  Sufficiency of the evidence

A case involving an injury to or death of a child often depends on circumstantial evidence because there is rarely direct evidence of exactly how the injuries occurred. *Bearnth v. State*, 361 S.W.3d 135, 140 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). In *Bearnth*, the evidence was sufficient to support the

jury's verdict of felony murder because a witness testified that the child was uninjured and behaving "normally" the night before the child's death and the defendant was the only adult with the child after that witness's observation. 361 S.W.3d at 139–40.

To determine whether the defendant caused the injury leading to death, the State may rely on reliable medical testimony from qualified experts to estimate when the injury occurred. For example, in *Elledge v. State*, the physicians who treated the child at the hospital testified that the injury likely occurred about an hour before the child was admitted to the hospital. 890 S.W.2d 843, 846 (Tex. App.—Austin 1994, writ ref'd). Because the evidence supported the conclusion that the defendant was the only adult with the child for that hour and that the injury was not the result of an accident, the evidence was sufficient to support the jury's determination that the defendant caused the injury. *Id.* at 847.

Regarding the timing of James's fatal injuries, several witnesses testified that James likely suffered the fatal injuries during the period he was alone with Gutierrez. The doctor who treated James in the hospital testified the head injury "most likely" occurred the day James was admitted to the hospital because (1) James could not have been acting "normal" or be "alert and interactive" like he was in the pictures from the previous day if James was suffering from the fatal head injury and (2) the injury showed no "evidence of healing." The Harris County

7

Medical Examiner who conducted the autopsy agreed that the head injury that caused James's death occurred shortly before James was admitted to the hospital for the same reasons as the treating doctor. Circumstantial evidence supported the medical testimony; the roommate testified that James was acting "normal like every day" the morning he died before he was left alone with Gutierrez.

Multiple witnesses testified that Gutierrez was alone with James at the time James sustained the fatal injury. The roommate, James's mother, and the emergency personnel testified that Gutierrez was the only adult with James at the time he became unresponsive. No contrary evidence was presented at trial.

Gutierrez argues that James "probably sustained the various injuries, ranging from the day [he] was taken to the hospital up to two weeks prior to presenting at the hospital" and refers to the second medical examiner's testimony that James had suffered fractures in his leg about 10 to 14 days before he was admitted to the hospital. That examiner, however, also testified that these leg injuries did not cause James's death and agreed with the other medical witnesses that the head injury (which caused James's death) likely occurred shortly before James was admitted to the hospital.

We overrule Gutierrez's sole issue.

## Conclusion

We affirm Gutierrez's conviction.

8

Harvey Brown
Justice

Panel consists of Justices Bland, Brown, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).