**GRANT Rehearing, ABATE and REMAND; Opinion Filed September 13, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00247-CR

### CARSTEN HEDEMANN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1434917-R**

## PRELIMINARY OPINION ON REHEARING

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

We grant appellant's motion for rehearing. We withdraw our opinion of June 19, 2019. This is now the opinion of the Court.

The State charged appellant with aggravated sexual assault of a child. He waived a jury and pleaded no contest. The trial court found him guilty and assessed his punishment at thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises eight issues in this Court, challenging the voluntary nature of his plea, the State's failure to produce certain discovery in a timely way, the trial court's rulings concerning his motion for new trial, and the competence of the complaining witness to testify at trial. In a single cross-point, the State asks us to modify the trial court's judgment to reflect appellant's plea correctly. We abate this appeal and remand to the trial court for a hearing on appellant's motion for new trial.

**Background**

*Facts and Allegations*

When she was four years old, A.H. told her mother (Mother) that she and her father (appellant) had been playing a game called the "yummies," in which appellant licked her "cola," and then she licked his "cola."[1] After speaking to her daughter's teacher and her priest, Mother took A.H. to the Irving Child Advocacy Center (ICAC). At the ICAC, A.H. underwent a forensic interview with Bibiana Dominguez, which confirmed that A.H. had been sexually abused.

Mother and appellant separated, and A.H. began weekly counseling sessions with Barbara Banda. After approximately eight months of counseling, A.H. told Banda that appellant had shown her a movie; Banda related A.H.'s description of the movie as "girls" giving oral sex to their "daddies."

A.H. testified at trial, by which time she was seven years old. She described the game she had played with her father and the video he had shown her on his computer.

Appellant testified that days before A.H.'s outcry, A.H. had walked in on him watching adult pornography. When she asked him about what she had seen, he attempted to talk to her about what she had seen in the context of sex between parents. He did not tell Mother about the incident because their relationship was already strained. He described playful conduct he had with A.H. but denied any sexual contact with her. He contended that A.H. had confused the movie she saw with reality.

*The "Missing Evidence"*

Most of appellant's issues address in some fashion what we will call the "missing evidence." Appellant contends that the State failed to turn over—or to turn over in a timely

---

[1] The record establishes that A.H. used the word "cola" to describe both her own sexual organ and her father's sexual organ.

manner—two emails between Mother and Banda and a portion of the video of A.H.'s recorded forensic interview at ICAC.

The emails were forwarded to appellant's counsel from the prosecutor on the morning of appellant's trial. In one email, Mother told Banda that A.H. had informed her that an incident of the conduct had occurred when she (Mother) was in the house; she called appellant a "monster" for this brazen abuse of their daughter. Mother also relayed A.H.'s confusion regarding good and bad touches when Mother bathed her. In addition, one email related in some detail Mother's appreciation for training concerning handling child abuse, which she had received through a video by Governor Greg Abbot.

As to the missing video, A.H.'s forensic interview took place over two days. Dominguez testified that these interviews are videoed as a matter of course. However, during her testimony, it became apparent that either the video of part of one day's interview was missing or that a portion of the interview had mistakenly not been recorded. Dominguez testified that A.H. responded during the interview that she had not been exposed to pornography; that exchange did not take place during either of the two videos produced to appellant by the State.

Appellant argues that the missing evidence would have undermined the credibility of both A.H. and Mother at trial.

*Procedural Background*

Appellant was initially charged with sexual abuse of a child under six years of age. During the State's investigation, Father's computer was seized. State experts discovered pornography involving adults and children on the computer. Appellant agreed to plead no contest to the charge of sexual abuse of a child under fourteen, which allowed for the possibility of a shorter sentence and parole. In return, the State did not offer evidence of the child pornography found on appellant's

computer. As part of the plea process, the trial court orally admonished appellant, and he signed the State's written admonition to sex offenders.

The trial court found appellant guilty and sentenced him to thirty years' confinement. Appellant timely filed his Motion for New Trial and Request for Hearing. The motion was overruled by operation of law without a hearing.

This appeal followed.

## The Motion for New Trial

Appellant first identified his concerns involving what we have called the missing evidence in his motion for new trial. We initially address appellant's sixth issue, in which he contends that the trial court erred by overruling his request for a hearing on the motion. A defendant has a right to a hearing on a motion for new trial when the motion raises matters that cannot be determined from the record. *Reyes v. State*, 849 S.W.2d 812, 816 (Tex.Crim.App.1993). We review the denial of a hearing on a motion for new trial for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009).

### *Presentment*

The State argues that appellant did not properly present his motion for new trial. Appellant's motion for new trial attached the two emails discussed above and an excerpt of A.H.'s trial testimony. The motion also contained a Fiat, but the record does not include a signed copy of this Fiat setting a hearing on the Motion. Nor does it contain a docket notation or any other indication that the trial court was made aware of the motion and appellant's desire for a hearing. The record does contain a series of emails between appellant's counsel's assistant and one of the trial court's reporters, which appellant contends was his presentment of the motion for new trial to the trial court.

–4–

A motion for new trial must be "presented" to the trial court within ten days of its filing. TEX. R. APP. P. 21.6. This means the defendant must give the trial court actual notice that he timely filed a motion for new trial and requests a hearing. *Obella v. State*, 532 S.W.3d 405, 407 (Tex. Crim. App. 2017) (per curiam). Presentment must be shown on the record. *Gardner v. State*, 306 S.W.3d 274, 305 (Tex. Crim. App. 2009). It can be proved by the judge's signature on the motion itself or on a proposed order; it can also be proved by an entry on the docket sheet showing presentment or setting a hearing date. *Id.* Merely filing the motion, however, does not accomplish presentment. *Stokes v. State*, 277 S.W.3d 20, 24 (Tex. Crim. App. 2009).

Appellant contends that his counsel's assistant's email to a court reporter accomplished presentment. The assistant's messages stated:

> Dear Debbie,
>
> Attached is a file-marked copy of our motion for new trial, along with a copy of the proposed Fiat. Please accept the e-mail as our request for submission of the attached documents to the Judge and a request for a setting for a hearing. We look forward to hearing back from you. Thank you.
>
> Sincerely,
>
> Julie Gold
>
> Assistant to Jeff L. Pierce

The court reporter responded:

> Dear Julie,
>
> The hearing for the Motion for New Trial needs to be heard by January 2, 2018. I will ask [the State's trial counsel] what works for her and then have her contact Mr. Pierce. Is Mr. Pierce requesting the transcripts be provided before the Motion for New Trial and if so is Mr. Pierce paying for the record?
>
> Also, I don't know if [appellant] is still in the Dallas County Jail. If he has been sent to TDC then Mr. Pierce will need to contact the coordinator in the 265th JDC and have her bench warrant [appellant] back to Dallas. Would you please let me know when he will be in Dallas County (if he is not here already)?

Thank you,

Debi Harris

Gold then responded that they did not need transcripts and that appellant was still in the Dallas jail.

The Texas Court of Criminal Appeals has stated that presentment "must be directed to the trial court or another authorized to act on behalf of the trial court." *Stokes*, 277 S.W.3d at 22 (quoting *Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998)). We know that a defendant may present his motion to the trial judge through a court coordinator, who is tasked with setting hearings for the trial judge. *Bearnth v. State*, 361 S.W.3d 135, 146 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Butler v. State*, 6 S.W.3d 636, 641 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd)). The *Butler* court analyzed the presentment requirement in depth and concluded:

> Considering the policy reasons behind the presentment requirement (calling the motion to the trial court's attention), the court coordinator's role (serving as the trial court's agent in scheduling and monitoring the court's caseload), and the Court Administration Act's purpose (providing "a prompt, efficient, and just hearing and disposition of all disputes"), it is clear that presentation to the court coordinator satisfies the presentment requirement of giving actual notice to the trial court.

6 S.W.3d at 641. The question before us is whether, under the circumstances of this case, the court reporter was authorized to act on behalf of the trial court, *see Stokes*, 277 S.W.3d at 22, by setting hearings as a court coordinator would typically do, *see Bearnth*, 361 S.W.3d at 146.

We begin our analysis with certain procedural facts we can glean from the record. Although appellant's case was formally assigned to the 265th Judicial District Court, the docket sheets in the record make clear that this case was tried in Auxiliary Court No. 8 by Senior Judge Gary R. Stephens. Debi Harris was one of three court reporters identified on those sheets.

Dallas County identifies all county and district courts on its website. For each, it identifies the presiding judge and the court coordinator. We are unable to locate any identification of the

County's auxiliary courts, their presiding judges, or their coordinators, if any. Indeed, it is difficult to locate any information concerning the auxiliary court system in Dallas County.

It is apparent that these courts can be used in many ways within our County judiciary. *See, e.g., Nichols v. State*, No. 05-97-00753-CR, 1999 WL 675430, at *3 (Tex. App.—Dallas Sept. 1, 1999, pet. ref'd) (mem. op., not designated for publication) (where "the visiting judge introduced himself as a visiting judge 'here in Auxiliary 6, overflow Court, supplemental Court, Annex Court, whatever you might want to call it.'"). Some appear to have a dedicated purpose, such as truancy cases, *see, e.g., Diguette v. State*, No. 05-11-01274-CR, 2012 WL 5396404 (Tex. App.—Dallas Nov. 6, 2012, no pet.) (mem. op., not designated for publication) ("On Appeal from the County Court, Auxiliary Court No. 4, Dallas County, Texas, Trial Court Cause No. TR–11–13323"), or drug cases, *see Broussard v. State*, No. 05-99-01039-CR, 2000 WL 1612152, at *1 (Tex. App.—Dallas Oct. 30, 2000, pet. ref'd) (mem. op., not designated for publication) ("The trial court then assigned appellant's case to Auxiliary Court No. 1, Dallas County's 'drug court.'"). Appellant refers to Auxiliary Court No. 8 as the "Child Advocacy Court."[2] However, if this court has a court coordinator, we find no identification of such a position in public County records.[3]

Appellant argues that Harris performed the services of a court coordinator for Judge Stephens and the Child Advocacy Court. He points to the following facts:

---

[2] We take judicial notice of the fact that Auxiliary Court No. 8 is also sometimes known as Dallas County's "Child Abuse Court." *See* TEX. R. EVID. 201 (permitting at any stage of the proceeding judicial notice of facts generally known within the trial court's territorial jurisdiction). *See, e.g.,* Attorney's Directory: Useful Telephone Listings for Dallas, Tarrant, Collin, Denton, Ellis, Rockwall and Surrounding Counties, 2017 ed., 3 ("Attorney's Directory").

[3] While we have found no official identification of such a coordinator for Auxiliary Court No. 8, the above-cited Attorney's Directory, produced by a group of bail bond companies, contains the following listing:

**CHILD ABUSE COURT**

| **Auxiliary Court No. 8** | (214) 653-5724 | 5th Floor, FCCB |
|---|---|---|
| Judge Gary Stephens | | |
| Coordinator Reporter Debi Harris | | |

Again, we take judicial notice of this listing. *See* TEX. R. EVID. 201.

- When Harris received the above email, asking her to submit the motion for new trial and fiat to the judge and to set the hearing, she responded with information (the latest possible date for such a hearing), an offer of assistance (she would contact the prosecutor to begin scheduling process), and a relevant question (whether the appellant was still in the County Jail). Although she also responded as a court reporter (asking whether appellant's counsel would need transcripts prepared for the hearing), none of the other components of her response represent duties of a court reporter.

- In a series of documents in the record, we learn the following events unfolded over a relatively short period of time:

  - On June 27, 2017, trial was set for July 6, 2017. The record does not indicate why that trial date was passed.

  - On July 20, 2017, appellant filed a motion to compel access by his expert witness to computer data in the possession of the State.

  - On July 21, 2017, the coordinator for the 265th judicial district court, Sharon Johnson, emailed appellant's counsel, stating:

    > This case has not been reset since 7-6 [2017]. I need a pass slip for a hearing setting or a trial date. Please come in Monday, July 24 and get with [the assistant district attorney] [for] a new court setting.

  - On July 25, 2017, the court reporter from Auxiliary Court No. 8 (whom appellant identifies in his brief as Harris) notified appellant's counsel that the case had been set for trial—in that court's "Red Book"—on August 28, 2017.

  - The August 28, 2017 trial setting was continued after appellant filed a motion for continuance stating witnesses were unavailable.

  - On September 13, 2017, appellant filed a second motion for continuance (later withdrawn) explaining that his expert witness could not complete the forensic computer analysis necessary to testify on September 18, 2017. This motion explains the "scheduling rush" that began when he learned that trial had been set by "the court reporter attached to Aux. Court 8."

–8–

Given these facts, appellant argues, Harris was functioning as the Child Advocacy Court's coordinator, maintaining the Red Book in which scheduling for both motions for new trial and trial settings was kept.

After appellant filed his motion for rehearing, we requested a response from the State, and a response was filed. However, the State did not dispute any of the above facts. We assume, therefore, that appellant's reporting of those facts is accurate. *See* TEX. R. APP. P. 38.2(a)(1)(B) (appellee's brief need not include facts unless dissatisfied with appellant's brief).

Rather than challenging the facts as appellant set them forth, the State argues first that nothing in the record establishes that Harris was the "official" court reporter for the Child Advocacy Court. We agree, and we acknowledge that Harris was one of three reporters who transcribed one or more hearings in this case. But whether Harris did or did not have that title is not dispositive of our issue, i.e., whether she performed the duties of a court coordinator in this case.

As to appellant's emphasis on Harris's role in the setting of a trial date, the State argues that appellant's motions did not identify the court reporter by name, and more than one reporter had worked on his trial. But, again, the State does not dispute appellant's discussion of the events surrounding that trial setting. Assuming, therefore, that appellant's reporting of the facts is accurate, his counsel knew which court reporter had informed him of the trial date and was in possession of the "Red Book" used for scheduling. And knowing which court reporter had overseen that trial schedule, he presented his motion for new trial to Harris. His email to her indicates he believed she had been—and still was—responsible for scheduling in that court.

The State points briefly to the only significant appearance in the record of Johnson, the court coordinator for the 265th District Court, as if she were the proper person to set appellant's

motion for new trial.[4] But this appearance actually argues against the State's conclusion. Johnson emailed appellant's counsel on July 21, 2017, stating that the case had not been re-set and that counsel needed to come to the courthouse, meet with the prosecutor, and get a new trial setting. But, as appellant explains in his motion for rehearing, the case *had* been set for trial on August 28, 2017. His counsel was informed of that fact on July 25 by Harris. It is apparent that Harris, in that situation, was responsible for the auxiliary court's trial settings; it is equally apparent that the coordinator for the 265th court was not. *See Butler*, 6 S.W.3d at 641 (coordinator's role is to serve as trial court's agent in scheduling and monitoring court's caseload).

Had appellant merely filed his motion for new trial, he would not have accomplished presentment. *Stokes*, 277 S.W.3d at 24. But appellant went beyond mere filing. The email to Harris was clearly an attempt at presentment: it transmitted a file-stamped copy of the motion for new trial together with a fiat, it requested that Harris submit those documents "to the Judge," and it requested a hearing. *See Obella*, 532 S.W.3d at 407 (defendant must give trial court actual notice that he timely filed motion for new trial and requests hearing). We conclude, in the limited circumstances of this case, that presentment to Harris was both a good faith effort of presentment and a reasonable attempt to present the motion to the person "authorized to act on behalf of the trial court." See *Stokes*, 277 S.W.3d at 22.

The State makes a final argument, contending that even if Harris were performing the duties of a court coordinator in this case, appellant's attempt at presentment fails because neither Harris nor the trial court made an official notation of presentment or a hearing date. "[T]here are many ways to show presentment of a motion for new trial to the trial court." *Id.* at 24. In determining that an unsigned docket sheet entry was sufficient evidence of presentment, the *Stokes*

---

[4] The State's response does cite, without explanation, to a prior appearance by Johnson. One week after appellant was indicted, she emailed KELLBAIL@MSN.COM stating that appellant's "first setting" would be on March 5, 2015." Obviously, this occurred before the case was transferred to the Auxiliary Court No. 8.

court stated that "[i]t is more likely that only the judge and those authorized to act on his or her behalf have access to the docket sheets and can make entries to them." *Id.* The "notation" requirement, then, appears to be an evidentiary one, a way of establishing that the movant actually delivered the motion to the trial judge or to someone serving as his agent in scheduling and monitoring the court's caseload. *See Butler*, 6 S.W.3d at 641. We have concluded, under the limited circumstances of this case, that Harris was authorized to serve as Judge Stephens's agent in those matters. Accordingly, we likewise conclude that Harris's written response to appellant's emailed presentment—which indicated a willingness to schedule a hearing on the motion for new trial—sufficed as an official notation to satisfy the evidentiary requirement of presentment.

*Right to a Hearing on Motion for New Trial*

We review the trial court's denial of a hearing on appellant's motion for new trial for an abuse of discretion. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). "Our review, however, is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). The movant need not establish a prima facie case; the motion is sufficient "if a fair reading of it gives rise to reasonable grounds in support of the claim." *Id.* at 339. The purpose of the hearing is to give the defendant the opportunity to develop fully the matters raised in his motion. *Brantley v. State*, No. 05-13-01060-CR, 2015 WL 846749, at *4 (Tex. App.—Dallas Feb. 26, 2015, no pet.) (mem. op., not designated for publication).

Appellant's motion attached his attorney's affidavit, which sponsored the missing emails, a transcription of A.H.'s trial testimony, and a one-page log of comments by Banda concerning A.H.'s treatment. The motion asked the trial court to explore and clarify whether the defense had received all of the forensic interviews in the case. It argued further that the emails were untimely

produced by the State despite the defense's significant pre-trial efforts to obtain all communications between Banda and A.H.'s mother. The emails were of consequence, appellant argued, as both exculpatory and impeachment evidence. The State's duty to disclose encompasses both impeachment and exculpatory evidence. *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). In addition, "prosecutors have a duty to learn of *Brady* evidence known to others acting on the state's behalf in a particular case." *Id.* (citing *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995)). Appellant argued in his motion that Banda was a member of the prosecution's "team."

The value of these emails—and of any existing-but-unproduced forensic interview of the child—to the defense cannot be determined from the record of the trial. If evidence was withheld by the State, and appellant can establish that the evidence would have been material to his defense, he could be entitled to relief. *See Smith*, 286 S.W.3d at 340. We conclude appellant was entitled to a hearing on his motion for new trial, and the trial court abused its discretion in failing to afford him one.

We sustain appellant's sixth issue.

## Conclusion

Appellant's remaining issues are intertwined with his motion for new trial and the evidence attached to that motion. In the absence of a hearing and ruling on that motion, we are unable to address those remaining issues. Accordingly, we abate this appeal and remand this case for an evidentiary hearing on appellant's motion for new trial.

/Bill Pedersen, III/

Do Not Publish
TEX. R. APP. P. 47

BILL PEDERSEN, III
JUSTICE

180247F.U05