UNITED STATES of America

v.

Wilbur SIBLEY.

Crim. No. 81–342.

United States District Court,
E. D. Pennsylvania.

March 24, 1982.

Peter F. Vaira, U. S. Atty., Peter J. Smith, Geoffrey L. Beauchamp, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

Alan M. Lieberman, Philadelphia, Pa., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On November 23, 1981, the United States Attorney for Eastern District of Pennsylvania filed a criminal information charging the defendant with mail fraud in violation of 18 U.S.C. § 1341. The information alleges that the defendant, Deputy Health Officer of Plymouth Township, Montgomery County, Pennsylvania, received payments through the mails from the operators of Moyer's Landfill in Lower Providence Township, Montgomery County, Pennsylvania in return for his influencing Plymouth Township to do business with Moyer's Landfill.

On January 4, 1982, the defendant filed with this Court a motion to suppress statements taken from him on May 20, May 26, and June 3, 1981, and all evidence, statements and testimony derived directly and indirectly, therefrom. For the reasons hereinafter set forth, the Court will deny defendant's motion.

On January 11, 1982, the Court held a hearing on defendant's motion to suppress. On January 12, 1982, the Court announced it decision denying defendant's motion. On January 13, 1982, a plea agreement was presented to this Court. The agreement, set forth in a memorandum of understanding between the government and the defendant, provided that the defendant would plead guilty to the offense charged in the information and cooperate fully with the government "in any investigation and prosecution relating to the activities of Moyer's Landfill, Inc., its owners and officers." It was also agreed, pursuant to Federal Rule of Criminal Procedure 11(e)(1)(c), that probation would be the appropriate sentence. The agreement further provided that, pursuant to *United States v. Zudick*, 523 F.2d 848 (3d Cir. 1975), the entry of the guilty plea was conditioned upon the right of the defendant to appeal this Court's denial of his motion to suppress evidence. The agreement also provided that the government will dismiss the charges against Mr. Sibley in the event this Court's ruling on the suppression motion is reversed on appeal.

On March 24, 1982, the government having advised the Court that defendant Sibley had cooperated as required by the plea agreement, and the Court having reviewed the presentence report, the Court accepted the plea agreement and imposed upon the defendant a sentence of 25 months probation, with defendant to make restitution to Plymouth Township in the amount of $12,000 at the rate of $500 per month.

On January 11, 1982, the Court held an evidentiary hearing on defendant's motion to suppress statements which he made. Called as witnesses by the government were Special Agent George E. Bramley, Jr. of the Federal Bureau of Investigation, and Criminal Investigator William E. Graff of the Environmental Protection Agency. The defendant also testified. There were only slight differences in the recollections of the witnesses. Based on the evidence presented at the hearing, the Court found the following facts.

On May 20, 1981, Agents Bramley and Graff met outside the defendant's apartment house sometime between 7:30 and 8:00 a. m. They knocked on the defendant's door and were admitted to the apartment by defendant Sibley. The agents identified themselves and told the defendant that they were investigating Moyer's Landfill. Mr. Sibley invited the agents into his living room to talk. They told him that their investigation of documents and interviews had led them to conclude that a significant amount of money had gone from Moyer's Landfill to Mr. Sibley personally on a regular basis and that they were visiting him to ascertain his explanation. Mr. Sibley denied receiving money from Moyer's or its representatives. He stated that he had once received a case of liquor as a gift and distributed it to other township employees. The agents told Mr. Sibley that if he cooperated with them his cooperation would be brought to the attention of the United States Attorney and that this would benefit him if he had taken money from Moyer's Landfill. Furthermore, the agents told Mr. Sibley that he would derive greater benefit from cooperating if he did so quickly. The agents did not give Mr. Sibley his *Miranda* warnings. Mr. Sibley had not been charged with any crime, was not under arrest, nor was he in custody at the time. As they departed, the agents gave to Mr. Sibley, Agent Bramley's telephone number with the suggestion that in the event he wished to tell them more he should telephone them.

Later, on May 20, an unidentified person called the FBI office in Lansdale, Pennsylvania and asked to speak with Mr. Bramley, who was not in at the time. Mr. Sibley admitted to being that caller. (N.T. 42). On May 26, 1981, Mr. Sibley called Agent Bramley in the morning and arranged an appointment to see him that afternoon. At 1:30 p. m., the defendant and Agents Bramley and Graff met in the FBI office in Lansdale. Mr. Sibley said he wanted to tell them more about his involvement with Moyer's Landfill. He then asked, "What about immunity?" (N.T. 16).

Agent Bramley replied that he could not grant him immunity and explained that immunity was in the hands of the United States Attorney, but "that I would act very stringently on his behalf in bringing his cooperation to the attention of the United States Attorney's office...." (N.T. 17). Mr. Sibley then proceeded to tell the agents about his taking money from the operators of Moyer's Landfill. The interview lasted for 45 minutes to an hour. (N.T. 19). No *Miranda* warning was given to the defendant. (N.T. 19). Mr. Sibley had come voluntarily to the Lansdale FBI office. He was not charged with a crime, and was not in custody nor was he placed under arrest. A few days later, Agent Bramley telephoned Mr. Sibley and told him that the United States Attorney wanted to talk to him on June 3, 1981, in the office of the United States Attorney.

On June 3, 1981, Mr. Sibley joined the agents and Assistant United States Attorneys Peter Smith and Geoffrey Beauchamp in Mr. Smith's office in the United States Courthouse in Philadelphia. Mr. Smith told the defendant that the United States intended to prosecute him but would treat him as leniently as possible under the circumstances. (N.T. 23). As on the two previous occasions (the May 20 and May 26 meetings), the defendant was not given a *Miranda* warning. He was told, however, that he should retain counsel. The defendant was then shown a typed memorandum containing the statement which he made at the May 26 meeting in the FBI office in Lansdale. He made some corrections and then signed the memorandum. (N.T. 24).

The defendant contends that the statements taken from him on May 20, May 26 and June 3, 1981, and all evidence, statements and testimony derived, directly and indirectly therefrom, should be suppressed because the aforesaid statements "were obtained in violation of the defendant's privilege against self-incrimination and in violation of due process of law," "were coerced and involuntarily made", were made without the assistance of counsel, and were made in response to statements of the government agents which overbore the defendant's will. In essence, the defendant contends that the totality of the circumstances surrounding the defendant's statements to the Agents makes the statements involuntary. The defendant relies upon *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897).

■ It is well settled that in testing the voluntariness of a statement, the Court must determine whether the government's behavior was such as to overbear the defendant's will to resist and therefore bring about a statement not freely self-determined. *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961); *United States v. Pomares*, 499 F.2d 1220, 1222 (2d Cir. 1974). In making such a determination, the Court must consider the entire set of circumstances resulting in the inculpatory statement. *See Beckwith v. United States*, 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976); *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

The instant case presents a factual situation falling between the two extremes of an obviously voluntary statement given with no inducement and an obviously involuntary confession obtained under harsh custodial interrogation. Consequently, it is not surprising that neither the prosecution nor the defense has cited a case on all fours with the circumstances presented.

■ Both parties agree that the defendant was not in custody during any of the three discussions with government's Agents. It is agreed that the government was not obligated to give Mr. Sibley a *Miranda* warning on any of the three occasions. Thus, the only question to be decided by the Court is whether the government's conduct reasonably induced the defendant to believe that in the event he gave a full and complete statement he would not be prosecuted. In other words, provided the circumstances herein presented Mr. Sibley with a *reasonable* basis for believing that in the event he gave a statement he would not be prosecuted, then his statements can be found involuntary and should be suppressed.

A close examination of the totality of the circumstances surrounding the questioning of Mr. Sibley indicates that his statements of May 26, 1981 and June 3, 1981 were given voluntarily with full knowledge that he might be charged with a crime. At the outset of his May 26 meeting with Agents Bramley and Graff, Mr. Sibley asked about immunity, a question which showed that he was aware of his status as a potential defendant. After he asked about immunity, he was told that only the United States Attorney could confer immunity. Having been advised of the inability of Agents Bramley and Graff to confer immunity, the defendant nonetheless proceeded to give a full and complete statement of his involvement with Moyer's Landfill. Such a statement, given freely while the defendant was not in custody, was a voluntary statement. While Agents Bramley and Graff may have stressed Mr. Sibley's role as a witness, they never represented that he would not not be a defendant or that he would be granted immunity. Mr. Sibley was well aware that he might be prosecuted.

At the outset of the June 3 meeting in Assistant United States Attorney Smith's office here in the Courthouse, Mr. Sibley was advised of the government's intention to prosecute him. Mr. Sibley did not make any inquiry concerning immunity. Thus, in the face of absolute knowledge that he would be prosecuted, Mr. Sibley read, corrected, and signed a memorandum memorializing his May 26 statements to Agents Bramley and Graff. At no time during the June 3 meeting did the defendant express surprise over the government's decision to prosecute, nor did he complain that he had been led to believe he would receive immunity. If Mr. Sibley had been induced to believe that he was or would be immunized, he certainly would have made this known at the time Mr. Smith announced the government's decision to prosecute.

The totality of the circumstances surrounding Mr. Sibley's May 26 and June 3 statements gave no indication that his will was in any way overborn by the government, either by inducement or coercion. Thus, his statements at those meetings meet the test of voluntariness set forth in *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). Mr. Sibley's May 20 statements to Agents Bramley and Graff were likewise voluntary. However, the defendant made no incriminating statements at the May 20 meeting.

In many cases, courts have reviewed the promise of the government to call to the attention of the United States Attorney the fact that the defendant has cooperated by giving a statement. Such inducements have consistently been held by the courts as not rendering the resulting statements involuntarily. *See United States v. Cone*, 354 F.2d 119, 121 (2d Cir. 1965); *United States v. Fera*, 616 F.2d 590, 594–95 (1st Cir. 1980); *United States v. Glasgow*, 451 F.2d 557 (9th Cir. 1971); *United States v. Frazier*, 434 F.2d 994 (5th Cir. 1970).

In an exhaustive survey of the law of coerced confessions, the *Bram* Court examined both English and American cases. In almost all of the cases reviewed by the Court in *Bram*, the defendant whose confession was determined involuntary was in police custody and had been subjected to a "third degree" type of questioning. While *Bram* has never been overruled, cases such as *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have established requirements concerning the warnings which must be given criminal suspects. As a result, several circuit courts have questioned the complete applicability of *Bram* to non-custodial questioning.

In *United States v. Reynolds*, 532 F.2d 1150 (7th Cir. 1976), the Seventh Circuit noted

It is true that it has been said that any promise, 'however slight', which induces a confession renders it involuntary and hence inadmissible. (citing *Bram*). This is, however, hardly the rule today.

532 F.2d at 1158. The Court noted that many subsequent decisions had upheld convictions that could arguably be termed slightly induced through promises of consideration in return for cooperation. 532 F.2d at 1158–1160, and that today the test for

voluntariness is more correctly based on an examination of the totality of the circumstances surrounding the conviction. 532 F.2d at 1159–60.

In *United States v. Ferrara*, 377 F.2d 16 (2d Cir.), *cert. denied*, 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967), the Second Circuit stated:

> The *Bram* opinion cites with approval the statement in an English textbook that a confession is not voluntary if 'obtained by any direct or implied promises, however slight'. That language has never been applied with the wooden literalness urged upon us by appellant. The Supreme Court has consistently made clear that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confession not freely self-determined . . . .'

377 F.2d at 17, citing *Rogers v. Richmond, supra.*

The Fifth and Ninth Circuits have likewise limited the broad language of *Bram* that any promise, however slight, which induces a confession, renders it involuntary and inadmissible. *See, e.g., United States v. Frazier*, 434 F.2d 994 (5th Cir. 1970); *United States v. Cluchette*, 465 F.2d 749, 754 (9th Cir. 1972); *United States v. Glasgow*, 451 F.2d 557, 558 (9th Cir. 1971).

Based upon the evidence presented at the hearing, this Court concludes that Mr. Sibley's statements of May 20, May 26, and June 3 were voluntary in all respects. Therefore, for the reasons heretofore set forth, the Court on January 12, 1982 denied defendant's motion to suppress.