Motions denied. Permanent injunction is to be entered.

It is so Ordered.

**UNITED STATES of America, Appellant,**

v.

**Lawrence C. FRACTION, Appellee.**

**No. 85–5412.**

United States Court of Appeals, Third Circuit.

Argued Jan. 10, 1986.
Decided June 30, 1986.

Donald J. Fay, (Argued), Chief, Appeals Div., Thomas W. Greelish, U.S. Atty., Newark, N.J., for appellant.

Richard Coughlin, (Argued), Asst. Federal Public Defender, Camden, N.J., for appellee.

Before GARTH and STAPLETON, Circuit Judges, and FULLAM, District Judge.*

## OPINION OF THE COURT

FULLAM, District Judge.

The government appeals from an Order of the United States District Court for the District of New Jersey, 613 F.Supp. 295, suppressing a confession as involuntary. The district court ruled that the confession had been improperly induced by promises.

We accept as correct the findings of historical fact made by the district judge. They may be summarized as follows:

On September 2, 1984, an FBI agent named White traveled to the Rahway State Prison in New Jersey in order to question the defendant, Lawrence Fraction, about a 1983 robbery of a bank in Woodbury, New Jersey. Fraction had just begun serving a 15-year state sentence on other, unrelated, charges.

The questioning took place in an interview room at the prison. Only the two men were present. According to the agent, whose testimony was credited by the district judge, the interview began with a comment from Fraction to the effect that he had been expecting the FBI to call upon him. Agent White then read Fraction his *Miranda* warnings, and Fraction signed the waiver form.[1] Fraction then stated that he would not be willing to testify against Samuel Hutchings. And Fraction asked what he would receive in return for cooperation. The agent replied as follows:

"At that time, I advised him that he would not have to testify against Mr. Hutchings.

"No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

---

* Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, *sitting by designation.*

**1.** The final sentence of the waiver form signed by Mr. Fraction stated:

"I also told him that I would not be able to promise him anything in terms of help other than to notify the U.S. Attorney and a sentencing judge that he had cooperated in the matter. And that was the extent of what I could do for him."

Fraction then proceeded to make a full statement about the bank robbery. The entire interview lasted about one-half hour.

■ The district court ruled that this statement was not voluntary and must therefore be suppressed. This ultimate legal conclusion of involuntariness is subject to plenary review. In *Miller v. Fenton*, — U.S. ——, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), the Supreme Court held that voluntariness is a hybrid question of law and fact subsuming a complex of values, and as such cannot be treated as a simple question of historical fact. Although *Miller* dictates plenary review of ultimate voluntariness findings in the context of federal habeas corpus review of state court determinations, the Supreme Court's reasoning and holding suggest that a similar approach is also appropriate in deciding a direct federal appeal.

In granting the suppression motion, the district court purported to follow the holding of *Bram v. U.S.*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed 568 (1897), and specifically the following oft-quoted language from that decision:

"[A] confession, in order to be admissible, must be free and voluntary: that is, must *not be* extracted by any sort of threats or violence, nor *obtained by any direct or implied promises, however slight,* nor by the exertion of any improper influence...." (Emphasis added.)

The district court correctly noted that this court has acknowledged the continued validity of the *Bram* decision, *see U.S. v. Sibley*, 535 F.Supp. 208 (E.D.Pa.), aff'd, 692 F.2d 750 (3d Cir.1982), and that the Supreme Court itself has continued to cite with approval the specific passage quoted above, *U.S. v. Raddatz*, 447 U.S. 667, 671, 100 S.Ct. 2406, 2410, 65 L.Ed.2d 424 (1980); *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976); *Lefkowitz v.*

*Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973).

The district judge acknowledged that the circuit courts of appeals have uniformly rejected the contention that a promise to bring cooperation to the attention of the authorities suffices to render a confession involuntary. *See, e.g., U.S. v. Fera,* 616 F.2d 590 (1st Cir.1980); *U.S. v. Cone,* 354 F.2d 119 (2d Cir.1965); *U.S. v. Hart,* 619 F.2d 325 (4th Cir.1980); *U.S. v. Posey,* 611 F.2d 1389 (5th Cir.1980); *U.S. v. Springer,* 460 F.2d 1344 (7th Cir.1972); *U.S. v. Glasgow,* 451 F.2d 557 (9th Cir.1971). It was the district judge's view, however, that the present case is distinguishable because (1) in the cited cases, the defendants were in custody as a result of having been arrested on the charges about which they were being questioned, whereas in the present case the defendant was serving a lengthy sentence on other charges; and (2) most of the cited cases involved promises to bring the defendant's cooperation to the attention of the prosecuting attorney, whereas here the sentencing judge was also mentioned.

We are not prepared to accept uncritically the suggestion that a prisoner in state custody serving a lengthy sentence is more susceptible to being influenced and manipulated by federal law-enforcement officials than a prisoner whom the federal law-enforcement officers have just taken into custody themselves—at the very least, the circumstances of each case and the individual susceptibilities of each defendant would have to be considered. But we need not pursue that issue, because of what we perceive to be a fundamental flaw in the district court's approach.

The issue is the voluntariness of the confession. Under *Bram* and its progeny, what renders a confession involuntary is that it was *obtained* as the result of a *promise*. On the facts found by the district court, Agent White did not make a promise, merely a correct factual response to the defendant's question; and the confession was not induced by what Agent White said.

In this context, a "promise" is an offer to perform or withhold some future action within the control of the promisor, in circumstances where the resulting action or inaction will have an impact upon the promisee. A promise is not the same thing as a prediction about future events beyond the parties' control or regarded as inevitable. The issue, then, is whether, from the perspective of the defendant, Agent White's statements included a promise of a benefit which, in the defendant's understanding, the agent could either grant or withhold.

The reality is that if a defendant confesses to a crime, the fact of that confession (the defendant's "cooperation") will inevitably come to the attention of the prosecutor and the sentencing judge. This defendant, whose "rap-sheet" occupies five pages of the appendix and shows innumerable arrests and sentences dating back to 1970, must surely have known this would happen, and was not within the agent's control. Indeed, it would have been clearly improper for the agent not to have advised the defendant of that consequence.

In addition to concluding that Agent White did not make a "promise" to the defendant, we are of the view that, on this record, no causal connection was shown between the alleged promise and the defendant's decision to confess. Fraction testified that he signed the Miranda waiver because Agent White had promised him that he would receive a lenient sentence or a sentence concurrent with his state term (the district court found that no such promise was made). Fraction also testified as follows:

"Q. What was the reason that you decided to give a statement?

"A. The reason that I decided to give a statement was that it appeared to me that from the things that he told me that—his being sure that I was involved, it was better for me to go ahead and get it cleared up now while I was incarcerated rather than to wait to, you know, be paroled from Rahway and have the U.S. Attorney pick me up."

In short, upon learning that the FBI knew or strongly suspected he was involved in the Woodbury bank robbery, the defendant, not surprisingly, concluded it would be in his own best interests to achieve a prompt resolution of the matter by confessing.

On the facts as found by the district judge, we conclude, as a matter of law, that the defendant's statement was voluntary. The Order appealed from will therefore be reversed.