ACCEPTED
14-14-00708-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
5/11/2015 2:25:37 PM
CHRISTOPHER PRINE
CLERK

## No. 14-14-00708-CR

In the
Court of Appeals
For the
Fourteenth District of Texas
At Houston

———————◆———————

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

5/11/2015 2:25:37 PM

CHRISTOPHER A. PRINE
Clerk

### No. 1324945

In the 351st District Court
Of Harris County, Texas

———————◆———————

**ODELL RODRICK ALLEN**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

———————◆———————

# STATE'S APPELLATE BRIEF

———————◆———————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**KATIE DAVIS**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24070242

**JOSEPH ALLARD**
Assistant District Attorney
Harris County, Texas

1201 Franklin Street, Suite 600
Houston, TX 77002
Telephone: (713) 755-5826
Fax Number: (713) 755-5809

*Counsel for Appellee*

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39, the State requests oral argument only if oral argument is requested by the appellant.

## IDENTIFICATION OF THE PARTIES

**Devon Anderson**—District Attorney of Harris County

**Katie Davis**—Assistant District Attorney on appeal

**Joseph Allard** — Assistant District Attorney at trial

*Appellant or Criminal Defendant:*

**Odell Rodrick Allen**

*Counsel for Appellant:*

**Joan Nwuli**—Counsel at trial and on appeal

*Trial Judge:*

**Honorable Mark Ellis**—Presiding Judge for the 351st D.C.

i

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

IDENTIFICATION OF THE PARTIES ................................................................i

INDEX OF AUTHORITIES.......................................................................... iii

STATEMENT OF THE CASE...................................................................... 1

STATEMENT OF FACTS ........................................................................... 1

SUMMARY OF THE ARGUMENT .............................................................. 4

REPLY TO APPELLANT'S FIRST POINT OF ERROR...................................... 5

    I.    Standard of Review and Applicable Law ........................................ 7

    II.  The appellant failed to show that law enforcement made a promise which induced him to give a false confession. ........................................ 9

REPLY TO APPELLANT'S SECOND POINT OF ERROR................................. 15

    I.    Standard of Review........................................................................ 15

    II.  The trial court did not abuse its discretion in adjudicating the appellant because the evidence showed that the appellant violated at least one term of his community supervision. ................................................ 16

REPLY TO APPELLANT'S THIRD POINT OF ERROR ................................. 21

CONCLUSION .......................................................................................... 22

CERTIFICATE OF SERVICE AND COMPLIANCE ......................................... 23

# INDEX OF AUTHORITIES

**CASES**

*Akbar v. State*,
   190 S.W.3d 119 (Tex. App.—
   Houston [1st Dist.] 2005, no pet.) ......................................................................16

*Alford v. State*,
   358 S.W.3d 647 (Tex. Crim. App. 2012),
   *cert. denied*, 133 S. Ct. 122 (2012) ...............................................................7, 8

*Apolinar v. State*,
   155 S.W.3d 184 (Tex. Crim. App. 2005).............................................................7

*Bearnth v. State*,
   361 S.W.3d 135 (Tex. App.—
   Houston [1st Dist.] 2011, pet. ref'd) .................................................................18

*Bram v. United States*,
   158 U.S. 532 (1897) .............................................................................................9

*Brooks v. State*,
   323 S.W.3d 893 (Tex. Crim. App. 2010).............................................................21

*Cardona v. State*,
   665 S.W.2d 492 (Tex. Crim. App. 1984)............................................... 15, 16, 22

*Chambers v. State*,
   866 S.W.2d 9 (Tex. Crim. App. 1993)............................................................ 11, 13

*Coleman v. State*,
   440 S.W.3d 218 (Tex. App.—
   Houston [14th Dist.] 2013, no pet.)..................................................................9, 14

*Creager v. State*,
   952 S.W.2d 852 (Tex. Crim. App. 1997)............................................................12

*Drake v. State*,
   123 S.W.3d 596 (Tex. App.—
   Houston [14th Dist.] 2003, pet. ref'd)................................................................11

*Espinosa v. State*,
   899 S.W.2d 359 (Tex. App.—
   Houston [14th Dist.] 1995, pet. ref'd)................................................................10

*Garcia v. State,*
  16 S.W.3d 401 (Tex. App.—
  El Paso 2000, pet. ref'd)...................................................................................18

*Garrett v. State*,
  619 S.W.2d 172 (Tex. Crim. App. 1981).........................................................20

*Guardiola v. State*,
  20 S.W.3d 216 (Tex. App.—
  Houston [14th Dist.] 2000, pet. ref'd)................................................................9

*Guzman v. State*,
  955 S.W.2d 85 (Tex. Crim. App. 1997)..............................................................7

*Hacker v. State*,
  389 S.W.3d 860 (Tex. Crim. App. 2013)..........................................................16

*Hernandez v. State*,
  421 S.W.3d 712 (Tex. App.—
  Amarillo 2014, pet. ref'd) ................................................................................13

*Herrera v. State*,
  194 S.W.3d 656 (Tex. App.—
  Houston [14th Dist.] 2006, pet. ref'd)...........................................................8, 11

*Hill v. State*,
  902 S.W.2d 57 (Tex. App.—
  Houston [1st Dist.] 1995, writ ref'd)..................................................................11

*Hollins v. State*,
  No. 01-13-00129-CR, 2014 WL 768327 (Tex. App.—
  Houston [1st Dist.] Feb. 25, 2014 pet. ref'd) ...................................................12

*Johnson v. State*,
  68 S.W.3d 644 (Tex. Crim. App. 2002)............................................................10

*Johnson v. State*,
  698 S.W.2d 154 (Tex. Crim. App. 1985)..........................................................13

*Johnson v. State*,
  943 S.W.2d 83 (Tex. App.—
  Houston [1st Dist.] 1997, no pet.).....................................................................21

*Kane v. State*,
  173 S.W.3d 589 (Tex. App.—
  Fort Worth 2005, no pet.)..................................................................................14

*Kizee v. State*,
01-14-00190-CR, 2015 WL 1061136 (Tex. App.—
Houston [1st Dist.] Mar. 10, 2015, no. pet. h.) ....................................................21

*Lynumm v. Illinois*,
372 U.S. 528 (1963) .................................................................................................8

*Martinez v. State*,
127 S.W.3d 792 (Tex. Crim. App. 2004)..................................................................9

*Mason v. State*,
116 S.W.3d 248 (Tex. App.—
Houston [14th Dist.] 2003, pet. ref'd)...................................................... 8, 9, 12

*Mayfield v. State*,
821 S.W.2d 357 (Tex. App.—
Houston [14th Dist.] 1991, no pet.)........................................................................14

*Miller v. Fenton*,
796 F.2d 598 (3d Cir. 1986).............................................................................8, 12

*Muniz v. State*,
851 S.W.2d 238 (Tex. Crim. App. 1993)................................................................10

*Ramirez v. State*,
76 S.W.3d 121 (Tex. App.—
Houston [14th Dist.] 2002, pet. ref'd)...................................................................10

*Reyes v. State*,
01-09-01043-CR, 2011 WL 286131 (Tex. App.—
Houston [1st Dist.] Jan. 27, 2011, no pet.)............................................................22

*Rickels v. State*,
202 S.W.3d 759 (Tex. Crim. App. 2006)................................................. 15, 16

*Sanchez v. State*,
603 S.W.2d 869 (Tex. Crim. App. 1980)................................................................16

*Shah v. State*,
403 S.W.3d 29 (Tex. App.—
Houston [1st Dist.] 2012, pet. ref'd) ....................................................................20

*Shepherd v. State*,
273 S.W.3d 681 (Tex. Crim. App. 2008)..................................................................7

*Smith v. State*,
790 S.W.2d 366 (Tex. App.—
Houston [1st Dist.] 1990, writ ref'd).....................................................................16

*State v. Duran*,
396 S.W.3d 563 (Tex. Crim. App. 2013).................................................................8

*State v. Melcher*,
153 S.W.3d 435 (Tex. Crim. App. 2005)................................................................7

*State v. Ross*,
32 S.W.3d 853 (Tex. Crim. App. 1997)..................................................................7

*State v. Saenz*,
411 S.W.3d 488 (Tex. Crim. App. 2013)................................................................7

*United States v. Fraction*,
795 F.2d 12 (3rd Cir.1986)...................................................................................10

*Valtierra v. State*,
310 S.W.3d 442 (Tex. Crim. App. 2010)...............................................................7

*Williams v. State*,
294 S.W.3d 674 (Tex. App.—
Houston [1st Dist.] 2009, pet. ref'd) ...................................................................19

## STATUTES

TEX. PENAL CODE § 22.04(a) (West supp. 2014).....................................................16

TEX. CODE CRIM. PROC. ANN.
art. 38.21 (West 2005).............................................................................................8

TEX. CODE CRIM. PROC ANN.
art. 57.01 (4) (West 2010) .......................................................................................2

TEX. CODE CRIM. PROC. ANN.
art. 57.02(h) (West supp. 2014) ..............................................................................2

TEX. CODE CRIM. PROC. ANN.
art. 57.03(d) (West 2010) ........................................................................................2

## RULES

TEX. R. APP. P. 39.................................................................................................... i

TEX. R. APP. P. 44.2(a)...........................................................................................14

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The State charged the appellant with possession of a controlled substance with intent to deliver, committed on October 26, 2011, during which he used or exhibited a deadly weapon (CR – 6, 10). He pled guilty to the charge in exchange for six years of deferred adjudication, and the trial court followed that plea agreement on July 19, 2012 (CR – 19-32). The State filed a motion to adjudicate on September 16, 2013 (CR – 34-35). The trial court found the appellant guilty, found the deadly weapon paragraph true, and sentenced him to thirty years confinement in the Texas Department of Criminal Justice, Correctional Institutions Division (CR – 95-96; 3 RR 12). The appellant filed timely notice of appeal and the trial court certified that he had the right to appeal (CR—101-2; CR Supp.—4).

## STATEMENT OF FACTS

The appellant received deferred adjudication for possession of a controlled substance, with intent to deliver, on July 19, 2013 (CR – 19-20; 2 RR 51-2). *See* (St. Exs. #1-2). One of the terms of his community supervision was he commit no further violations against the laws of Texas (CR – 21). And he was aware of that condition (CR – 23). The appellant understood the terms of his probation by agreeing to abide by them with the understanding that if he did not, his community

supervision could be revoked (CR – 19-23). The appellant did not present any evidence that he misunderstood the terms of his probation, nor did he claim the terms had changed.

After the appellant had been placed on deferred adjudication, he started a romantic relationship with Joneisha Bobb (2 RR 103). In June 2013, Joneisha and her children, Jane[1] and Joseph, moved in with the appellant (2 RR 103). Bobb would leave 20-month-old Jane in the care of La Quinta Shelton and Alean Joseph most of the time, but on occasions the appellant would watch her kids (2 RR 93). *See* (Def. Exs. #1-3).

On August 2, 2013, the appellant watched Jane while Bobb was at work (2 RR 96). When she returned from work, Bobb noticed that Jane's stomach started swelling (2 RR 95). And the following day Jane was whiney and could not sleep on her stomach (2 RR 94-5). The appellant told Bobb that Jane had fallen down the stairs chasing her brother and hurt her knee (2 RR 96-7). Bobb took Jane to the doctor on August 3 because she was not eating, had used the restroom only one

---

[1] A person "who has access to or obtains the name, address, telephone number, or other identifying information of a victim younger than 17 years of age may not release or disclose the identifying information to any person who is not assisting in the investigation, prosecution, or defense of the case." TEX. CODE CRIM. PROC. ANN. art. 57.02(h) (West supp. 2014). The term "victim" means a person who was the subject of: "(A) an offense the commission of which leads to a reportable conviction or adjudication under Chapter 62; or (B) an offense that is part of the same criminal episode, as defined by Section 3.01, Penal Code, as an offense described by Paragraph (A)." TEX. CODE CRIM. PROC. ANN. art. 57.01 (4) (West 2010). The release or disclosure of such information to any person is a class C misdemeanor. TEX. CODE CRIM. PROC. ANN. art. 57.03(d) (West 2010). Therefore, the pseudonym "Jane" will be used for the victim in this case.

time, and started vomiting (2 RR 95). The doctor checked Jane's knee and prescribed her some antibiotics (2 RR 96).

The following day, Bobb took Jane to stay with Shelton (2 RR 81-2, 89, 97). Jane stayed with Shelton for about a week (2 RR 98). During that time, Shelton noticed that Jane was clingy to her, very quiet and would barely eat anything (2 RR 82). Bobb picked Jane up on August 9, and she noticed that though she was still ill, Jane appeared better (2 RR 98). When Bobb left Jane with the appellant again on August 10 and 11, her condition got worse (2 RR 99-100). Bobb stayed home with Jane on August 12 and noticed that she could not sleep, was in pain, and her stomach was swollen (2 RR 99-100). Finally, on August 13, Jane's condition worsened, and the doctor told her to go to the hospital (2 RR 101).

At the hospital, doctors discovered that Jane had lacerations on her pancreas and spleen, nine fractured ribs, and a cracked breastbone (2 RR 56-63, 101). On August 14, Dr. Rebecca Giradet, the medical director of the division of child protection pediatrics at the University of Texas Medical School, examined Jane (2 RR 52). Giradet reviewed Jane's radiographic images, medical records, as well as, spoke to the social worker and her mother (2 RR 55). Giradet found that Jane's injuries were life-threatening (3 RR 56). She also discovered that a cyst had developed on Jane's pancreas laceration (2 RR 55).

3

Giradet believed based on her training and experience that these injuries were caused by abuse from an adult (2 RR 57-63, 77). Based on the number of injuries and the different levels of healing, Giradet determined that Jane had suffered two to three severe episodes of trauma (2 RR 63). She determined that the rib fractures were about three weeks old, but the other injuries were more recent (2 RR 58-63). Based on the cyst and symptoms Bobb described, Giradet believed that the pancreas and spleen injuries occurred around August 2 (2 RR 57).

Patrick Robinson with the Houston Police Department (HPD) interviewed the appellant regarding his role in causing Jane's injuries (2 RR 9-10). Although he did not admit to causing her injuries, the appellant stated that one time he did throw Jane from the bed to her brother who was on the floor. *See* (St. Ex. #3). The appellant was charged with causing serious bodily injury to a child committed on August 2, 2013 (CR – 34).

## SUMMARY OF THE ARGUMENT

The trial court did not abuse its discretion in admitting the appellant's statement because the officer's predictions or opinions that an explanation would help the appellant in the future did not render the statement involuntary.

The trial court did not abuse its discretion in revoking the appellant's community supervision because while under supervision the appellant committed

4

serious bodily injury to a child under the age of fifteen. Therefore, his conviction and sentence should be affirmed.

## REPLY TO APPELLANT'S FIRST POINT OF ERROR

In the appellant's first point of error, he argues that the trial court erred in denying his motion to suppress his statement. (App'nt Brf. 4-26). The appellant filed a motion to suppress his statements to law enforcement because they were not voluntarily given (CR – 53-6, 75-94). The trial court heard the appellant's motion to suppress in a hearing prior to the motion to adjudicate (2 RR 4-5).

In the hearing, Robinson testified that he conducted an interview and administered a polygraph exam to the appellant on August 26, 2014 (2 RR 9). He testified that the appellant was provided his statutory warnings; he was advised of his right to have an attorney, advised that he could have an attorney provided to him, advised that he had the right to remain silent, and advised that anything he said could be used against him (2 RR 12-13). *See* (St. Ex. #3). The appellant indicated that he understood these rights and waived them (2 RR 12-13). The appellant agreed to speak with Robinson (2 RR 12-14).

Robinson testified that he neither threatened nor promised the appellant anything in exchange for his statement during the interview (2 RR 14). Robinson stated that the door was unlocked; he was not armed, and there was no armed officer outside of the room (2 RR 12-14). He stated that he offered the appellant

5

something to eat and drink, and he did not deprive the appellant of the opportunity to use the restroom (2 RR 14-16). He indicated that although the appellant was calm during the interview, he appeared to have something on his mind and appeared relieved after he provided his statement (2 RR 15-17). Robinson explained that he attempted to build rapport with the appellant to make the conversation more comfortable by explaining that he thought the appellant was a good guy (2 RR 15-16).

The appellant testified at the hearing that he provided the officer an explanation to not go to jail (2 RR 40-42). The appellant stated that Robinson promised him that he could leave if he gave an explanation for Jane's injuries (2 RR 42). He testified that Robinson threatened him with not being able to see his children anymore unless he provided him an explanation (2 RR 42). The appellant explained that after Robinson's example of a different defendant accidentally hurting his girlfriend's child, the appellant felt that he had no choice but to tell Robinson a similar story (2 RR 42-3). The appellant stated he was tired during the interview (2 RR 44). Although the appellant stated that he felt he had no alternative except to tell the officer a story that was not true, he testified that prior to the interview he was provided his rights and that he understood them (2 RR 44-6). The trial court denied the appellant's motion to suppress (2 RR 47).

## I.     Standard of Review and Applicable Law

A challenge of a trial court's denial of a motion to suppress evidence on appeal will be evaluated for abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008); *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably without reference to any guiding principles. *State v. Melcher*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A reviewing court views the evidence in the light most favorable to the trial court's ruling. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The trial court is the sole fact-finder and judge of the witnesses' credibility and the weight to be assigned to their testimony. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 1997); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

A reviewing court gives almost total deference to a trial court's findings of historical facts as well as mixed question of law and fact if the question turns on the credibility and demeanor of the witnesses. *Alford v. State*, 358 S.W.3d 647, 653 (Tex. Crim. App. 2012), *cert. denied*, 133 S. Ct. 122 (2012); *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013); *see also Guzman*, 955 S.W.2d at 89. (finding a trial court's custody determination is reviewed using a bifurcated standard of review). But when there is a recorded statement with an uncontroverted version of events, credibility and demeanor are not necessary to the resolution, and

the court applies a *de novo* standard of review. *Alford*, 385 S.W.3d at 653; *see also*

*Herrera v. State*, 194 S.W.3d 656, 658 (Tex. App.—Houston [14th Dist.] 2006,

pet. ref'd) (finding when the court had a videotape of the confession and an

uncontroverted version of events, it should review the trial court's ruling on an

application of law to facts *de novo*); *State v. Duran*, 396 S.W.3d 563, 570–71 (Tex.

Crim. App. 2013) (noting a videotape can present indisputable evidence that is

reviewed *de novo*).

A defendant's statement may be used as evidence against him if it appears

that it was freely and voluntarily made without compulsion or persuasion. TEX.

CODE CRIM. PROC. ANN. art. 38.21 (West 2005). Psychological tactics are allowed

during interrogations. *Mason v. State*, 116 S.W.3d 248, 260 (Tex. App.—Houston

[14th Dist.] 2003, pet. ref'd) (citing *Miller v. Fenton*, 796 F.2d 598, 605 (3d Cir.

1986)). An officer "may play on a suspect's sympathies or explain that honesty

might be the best policy for a criminal who hopes for leniency." *Id.* It is only when

these ploys are so manipulative or coercive that they deprive the suspect of his

ability to make an unconstrained, autonomous decision, and not merely because

they caused the confession. *Id.*

A statement is involuntary if the record reflects that the statement was

induced by a promise of a benefit. *Mason*, 116 S.W.3d at 257-60 (citing *Lynumm v.*

*Illinois*, 372 U.S. 528, 534 (1963) and *Bram v. United States*, 158 U.S. 532, 542

(1897)). A promise renders a confession involuntary under Article 38.21 when it is "positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully." *Coleman v. State*, 440 S.W.3d 218, 224 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004)). A reviewing court looks to the totality of circumstances and determines whether the defendant's will was "overborne" by police coercion. *Mason*, 116 S.W.3d at 257 (citing *Guardiola v. State*, 20 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)).

## II. The appellant failed to show that law enforcement made a promise which induced him to give a false confession.

The appellant argues that his statements were not voluntarily given because the police made false promises of leniency and threats of consequences he would face without an explanation. (App'nt Brf. 25). Specifically, the appellant points to several of Robinson's statements in his "post-test" interview: that he would talk to the investigators about how the appellant is a good person, that he would not be able to help him once he leaves, and that it could be harder for him without an explanation for Jane's injuries. (App'nt Brf. 22-23). But Robinson informing the appellant that it would be better if he provided an explanation was merely his opinion or prediction about a future event, and not a promise to perform an action within his control. *See* (St. Ex. #3); *Mason*, 116 S.W.3d at 260-61 (noting that a

9

promise is an offer to perform or withhold some future action within the control of the promisor) (citing *United States v. Fraction*, 795 F.2d 12, 15 (3rd Cir.1986)).

This Court has consistently held that opinions or predictions about what may happen if the suspect does or does not cooperate do not render confessions involuntary. *See id.* (holding that an officer's statements that the situation would "go better" for appellant by giving a confession was a prediction about a future event did not amount to a promise); *Espinosa v. State*, 899 S.W.2d 359, 362–63 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (finding the officer's statements, "Go ahead and tell us what happened. Everything will be better for you. You will get less time" did not render the defendant's statement involuntary); *Ramirez v. State*, 76 S.W.3d 121, 126 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding that an officer's statement that "typically juries and the court system sometimes favor people [who] tell the truth" was simply a statement of opinion and not a promise to perform); *see also Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (holding that an officer's statement that leniency was sometimes shown when a defendant confessed was a statement of fact and failed to rise to the level of a promise).

Additionally, general promises of leniency and general offers to help do not render a confession involuntary. *See Johnson v. State*, 68 S.W.3d 644, 654 (Tex. Crim. App. 2002) (providing that an officer's representation that the appellant's

cooperation would be conveyed to the trial court was not a promise inducing a confession); *Herrera*, 194 S.W.3d at 660 (holding that the statement, "We can talk to the D.A., get you an offer, if you can help us," was not specific enough to influence appellant to speak untruthfully); *Drake v. State*, 123 S.W.3d 596, 603 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding that an officer's general, non-specific statement that an appellant "could help herself did not render appellant's statement involuntary").

The appellant points to no other evidence to show a causal connection between Robinson's expectation and the appellant's decision to confess. *See Hill v. State*, 902 S.W.2d 57, 59 (Tex. App.—Houston [1st Dist.] 1995, writ ref'd) (noting that a positive promise need not be unequivocal, but it must "carry the suggestion of a quid pro quo."); *Chambers v. State*, 866 S.W.2d 9, 20–21 (Tex. Crim. App. 1993) (characterizing a positive promise as one that denotes an "if-then relationship" that induces the appellant to confess by implicitly or explicitly suggesting a "deal, bargain, agreement, exchange, or contingency."). Therefore, the appellant failed to demonstrate that his will was "overborne" by the comments from Robinson.

Moreover, there is no evidence that Robinson had the apparent authority to make an offer. In fact, he told the appellant that he could not make him any promises and that he could not help him once he left the room. *See* (St. Ex. #3);

11

*Hollins v. State*, No. 01-13-00129-CR, 2014 WL 768327, at \*7 (Tex. App.—Houston [1st Dist.] Feb. 25, 2014, pet. ref'd) (mem. op., not designated for publication) (holding that the appellant could not have been induced to give a false confession based on alleged promises of a bond or leniency from the interviewing officer because the officer repeatedly informed the appellant that he did not have the authority to make any deals).

The appellant appears to argue that Robinson's example of an analogous accidental injury to a child coerced him into providing his statement. (App'nt Brf. 23-25). But, as stated previously, psychological tactics are allowed during interrogations. *Mason*, 116 S.W.3d at 260. Robinson's tactic of playing on the appellant's sympathies by letting him know that  he was not a bad person and that it could have been an accident was not improper questioning (2 RR 28). *See Miller*, 796 F.2d at 605; *see also Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997) ("Trickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process."). There is no evidence that Robinson's alternative scenarios of what may have occurred caused him to make a statement, overcoming his free will. *See* (St. Ex. #3). Furthermore, the appellant's statement, that he intentionally threw a 20-month-old child from the bed to the floor, was not equivalent to Robinson's

12

example of "accidental" injury caused by playing football wrapped in comforters. *See* (St. Ex. #3).

Although the appellant does not contend that the physical circumstances of the interrogation were unduly coercive, he appears to complain that the fact that he was tired caused him to make a false statement. (App'nt Brf. 26). But the lack of sleep alone will not render a confession involuntary. *Chambers*, 866 S.W.2d at 20 (quoting *Johnson v. State*, 698 S.W.2d 154, 159 (Tex. Crim. App. 1985)). Looking at the totality of the interview, the appellant still had the ability to make a free and rational choice of whether to answer or remain silent. The appellant was read and understood his rights, he did not have any medical conditions, he slept six to seven hours the night before the interview, and was not intoxicated (2 RR 12-16). *See* (St. Ex. #3 at 6:49). The appellant was not under arrest and was free to leave after the interview. *See* (St. Ex. #3).

State's Exhibit 3 shows that Robinson attempted to facilitate communication by being friendly and supportive throughout the entire interview. *See* (St. Ex. #3). His post-test statements were not threats to punish him for a failure to cooperate; rather they were accurate representations of his situation. *See Hernandez v. State*, 421 S.W.3d 712, 721 (Tex. App.—Amarillo 2014, pet. ref'd) (holding that an officer's statement emphasizing to Hernandez that she faced separation from her children "were not threats of governmental action to punish a failure to cooperate

but were accurate representations of her predicament."). Therefore, the appellant failed to show that his statement was involuntary.

Finally, a reviewing court defers to a trial court's determination of credibility. Although the appellant testified to the contrary, Robinson testified that he did not threaten or promise the appellant anything in exchange for his statement (2 RR 15). The trial court implicitly chose to believe Robinson's testimony over the appellant's, and this Court should defer to that finding (2 RR 47). *See Coleman*, 440 S.W.3d at 224 (deferring to the trial court's determination of credibility and demeanor and concluding that the trial court did not abuse its discretion by finding the appellant's statement voluntary when there was no evidence to support the appellant's allegation of a promise). Thus, the trial court did not err in admitting the appellant's statement.

Even if the appellant's statement were involuntary, the appellant was not harmed by its admission. *See* TEX. R. APP. P. 44.2(a); *Kane v. State*, 173 S.W.3d 589, 595 (Tex. App.—Fort Worth 2005, no pet.) (applying the standard for constitutional error in admitting involuntary statement); *see also Mayfield v. State*, 821 S.W.2d 357, 358 (Tex. App.—Houston [14th Dist.] 1991, no pet.) ("Reversal of a judgment for failure to conduct a voluntariness hearing is not constitutionally required."). First, the appellant's explanation does not match all of Jane's injuries. Giradet testified that Jane suffered two to three episodes of severe trauma

14

including blunt force trauma, like direct punches or kicks to her breastbone and abdomen, and compression force to her ribs (2 RR 61-4). Giradet explained that the injuries were not caused by a minor fall or play (2 RR 63-4). Second, the State did not rely on the statement or mention the statement in closing argument (2 RR 171-72). Finally, there appears to be some confusion on whether the trial court even considered the statement in adjudicating the appellant. *See* (App'nt Brf. 6).[2] Therefore, the appellant's first point of error should be overruled.

## REPLY TO APPELLANT'S SECOND POINT OF ERROR

In the appellant's second point of error, he argues that the evidence presented in his case was legally insufficient to show that he violated the terms of his deferred adjudication. (App'nt Brf. 26-50). This argument lacks merit because there was evidence showing the appellant violated his community supervision.

### I.    Standard of Review

A trial court's decision to revoke community supervision is reviewed under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). To revoke community supervision, the State must prove by a preponderance of the evidence that the appellant violated any one condition of

---

[2] After finding it true that the appellant violated a condition of his deferred adjudication, the trial court stated that it in no way took into account the answers the appellant provided during the polygraph or the results (2 RR 173).

15

community supervision. *Cardona*, 665 S.W.2d at 493; *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Smith v. State*, 790 S.W.2d 366, 367 (Tex. App.—Houston [1st Dist.] 1990, writ ref'd). When several violations are found by the trial court, a reviewing court will affirm an order revoking community supervision if the State proved any one violation by a preponderance of the evidence. *Sanchez v. State*, 603 S.W.2d 869, 870-71 (Tex. Crim. App. 1980); *Akbar v. State*, 190 S.W.3d 119, 122-23 (Tex. App.—Houston [1st Dist.] 2005, no pet.). As long as this burden is met, the trial court will not abuse its discretion in revoking supervision. *Rickels*, 202 S.W.3d at 763-64. The trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Cardona*, 665 S.W.2d at 493; *Hacker*, 389 S.W.3d at 865. Thus, the evidence is reviewed in the light most favorable to the trial court's ruling. *Id*.

**II. The trial court did not abuse its discretion in adjudicating the appellant because the evidence showed that the appellant violated at least one term of his community supervision.**

In the present case, the trial court adjudicated the appellant because he committed the offense of injury to a child (CR – 34; 2 RR 172-3). To establish that the appellant committed a new offense, the State had to prove by a preponderance of the evidence that the appellant intentionally or knowingly caused serious bodily injury to Jane, a child younger than fifteen years of age (CR – 34). *See* TEX. PENAL CODE § 22.04(a) (West supp. 2014). The State alleged six alternative manner and

16

means of committing this injury[3] (CR – 34). Based on the evidence presented, the trial court found that the appellant caused serious bodily injury to Jane by causing her to strike a blunt object (CR – 34; 2 RR 172-3).

The evidence supported this conclusion. Giradet testified that Jane suffered two to three severe episodes of trauma, including blunt force, that caused a life-threatening laceration to her pancreas, laceration to her spleen, and fractures to her ribs and breastbone[4] (2 RR 61, 65, 103). She concluded based on the combination of these injuries that Jane was abused by a person with adult strength and coordination (2 RR 66, 75). Giradet provided a timeline for the injuries that matched dates when Jane was alone in the appellant's care according to Bobb's testimony (2 RR 56-7, 61, 96-106). *See* (Def. Exs. #1-3). Therefore, the trial court did not abuse its discretion in adjudicating the appellant.

The appellant does not dispute that Jane suffered serious bodily injury (2 RR 66). (App'nt Brf. 44). Rather, he complains that the evidence was insufficient to establish that he caused that injury. (App'nt Brf. 44, 46). But evidence that the

---

[3] The alternative manner and means were: (1) by striking Jane with his hands; (2) by squeezing Jane with his hands; (3) by throwing Jane to the floor; (4) by shaking Jane with his hands; (5) by striking Jane with a blunt object; and (6) by causing Jane to strike a blunt object (CR – 34).

[4] Although the appellant does not complain that the evidence was sufficient to prove Jane suffered serious bodily injury, Giradet's testimony that these injuries were life-threatening and that she could have died without medical treatment supports the trial court's finding (2 RR 56-61). *See* TEX. PENAL CODE § 1.07(46) (West supp. 2014) (defining serious bodily injury to mean bodily injury that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of bodily function).

17

appellant had sole access to Jane at the time she sustained the injuries was sufficient to support the trial court's finding. *Bearnth v. State*, 361 S.W.3d 135, 140 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). "Texas case law is replete with holdings that when an adult defendant has had sole access to a child at the time its injuries are sustained, the evidence is sufficient to support a conviction for injury to a child." *Id*. (quoting *Garcia v. State,* 16 S.W.3d 401, 405 (Tex. App.—El Paso 2000, pet. ref'd)).

In the present case, the State's showed that the appellant had sole access to Jane on the dates her stomach was swollen, and the dates matched the timeline of when Jane's injuries likely occurred. Giradet testified that the injuries to Jane's pancreas and spleen[5] would have occurred around August 2 or 3 (2 RR 57). Giradet explained that the cyst on Jane's pancreas laceration would have taken at least a week to form, which corresponded with when the symptoms of her abdominal trauma began (2 RR 57). Bobb testified that she noticed Jane's stomach was swollen on August 2, and that the following day she began vomiting. (2 RR 94-6). *See* (Def. Ex. #3). Bobb testified that Jane stayed with the appellant on August 2 (2 RR 94-6). She stated that the appellant told her that Jane fell down the stairs and injured her knee that day (2 RR 96-7). Bobb testified that she took Jane to the doctor, but he only provided antibiotics and looked at Jane's knee (2 RR 96).

---

[5] Although Giradet testified that it was hard to date the spleen injury, it was her opinion that it occurred at the same time as the pancreas injury (2 RR 61).

Shelton testified that she watched Jane for a week after that August 3 doctor's appointment (2 RR 81). Although Jane barely ate anything at the beginning of the week, Shelton stated that Jane appeared to be getting better by the end of the week (2 RR 81-3). Bobb also stated that Jane appeared better after staying with Shelton for the week, but that Jane's stomach began swelling again on August 10 and 11 after she had stayed with the appellant (2 RR 98-9). On August 13, Bobb took Jane to the hospital because she would not eat, her stomach hurt, and she had not had a wet diaper (2 RR 100-101). Giradet explained that Jane's stomach swelling going up and down could have been caused by her injury being "re-aggravated." (2 RR 76). Therefore, the evidence was sufficient to establish by a preponderance of the evidence that the appellant caused serious bodily injury to Jane. *See Williams v. State*, 294 S.W.3d 674, 683 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding evidence was sufficient in injury to child case when medical examiner testified that child's injuries could not have occurred as defendant described and were sustained by violent physical abuse at time when defendant was alone with child).

Additionally, the State showed that the age of Jane's nine rib fractures coincided with another time Jane stayed with the appellant. Bobb testified that Jane stayed with the appellant three weeks prior on July 24, coinciding with Giradet's determination of when the rib fractures occurred (2 RR 61, 103). *See* (Def. Ex. #2).

Moreover, the appellant admitted in his statement that he intentionally threw Jane from the bed to her brother on the floor and that she whined afterward; he indicated that this occurred before her stomach began swelling. *See* (St. Ex. #3). And he admitted that, on a different occasion, he lifted her in the air to scold her and shook her. *See* (St. Ex. #3). Thus, the trial court did not abuse its discretion in adjudicating the appellant based on committing a new offense.

The appellant argues that other adults had access to Jane in addition to the appellant during the time-period Giradet established for when her injury occurred. (App'nt Brf. 46-49). But the mere existence of alternative theories or explanations for a child's injuries does not render the evidence insufficient. *See Shah v. State*, 403 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) ("Reconciliation of conflicts and contradictions in the evidence was within the province of the trial court, and such conflicts will not call for reversal if there was enough credible testimony to support the conviction."). As the exclusive judge of the credibility of the witnesses, the trial court could determine whether the allegations in the motion to adjudicate were sufficiently demonstrated. *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Moreover, the evidence on appeal must be viewed in the light most favorable to the trial court's ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).

Viewing the evidence in the light most favorable to the trial court's decision, it is sufficient to support a rational finding that the appellant caused serious bodily injury to Jane. *See Kizee v. State*, 01-14-00190-CR, 2015 WL 1061136, at \*4 (Tex. App.—Houston [1st Dist.] Mar. 10, 2015, no. pet. h.) (mem. op., not designated for publication) (holding that the trial court had the discretion to believe a victim, despite the appellant's assertions that she was intoxicated during the assault, as the sole trier of fact, judge of the credibility of the witnesses and weight to be given particular testimony in a probation revocation hearing). Thus, the appellant's second point of error should be overruled.

## REPLY TO APPELLANT'S THIRD POINT OF ERROR

In the appellant's third point of error he argues that the evidence presented in his case was factually insufficient to show that he violated the terms of his deferred adjudication. (App'nt Brf. 42). But this argument is without merit because factual sufficiency review is inapplicable to revocation proceedings. *Johnson v. State*, 943 S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.); *see also Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). Instead, as previously stated, appellate review of an order revoking probation is limited to abuse of the trial court's discretion; the evidence is examined in the light most favorable to the trial court's order to determine whether the State proved, by a preponderance of the evidence, that appellant violated the terms of his community supervision. *Id.*

(citing *Cardona*, 665 S.W.2d at 493–94); *see also Reyes v. State*, 01-09-01043-CR, 2011 WL 286131, at \*3 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (noting that a factual sufficiency review is inapplicable to revocation hearings). Therefore, a separate analysis is not required and the appellant's third point of error should be overruled.

## CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ *Katie Davis*
**KATIE M. DAVIS**
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number:  24070242

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 5,405 words in it; and (b) a copy of the foregoing instrument will be served by efile.txcourts.gov to:

Joan Nwuli
10203 Birchridge Dr., Ste 320
Humble, TX 77338
P: 713-222-9200
F: 281-441-4200
Ujulaw5@yahoo.com

/s/ ___Katie Davis___

**KATIE M. DAVIS**
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number:  24070242

Date:  May 11, 2015